# The Lake Shore and Michigan Southern Railway Company

*v.*

## Philip Bodemer, Admr.

*Filed at Ottawa January 18, 1892.*

1. Negligence—*facts tending to show—unusual speed of train.* Where a railway train which killed a person on its track was traveling at the unusual speed of thirty-five or forty miles an hour, in a crowded city,. over street crossings, upon unguarded tracks so connected with a public street, and so apparently the continuation of a public street, as to be regarded by many as located in a public street, along a portion of such track where persons were known to be passing and crossing every day, in violation of a city ordinance as to speed, and without warning of the approach of the train by the ringing of a bell, and the track was straight and unobstructed, such conduct tends, at the least, to show such a gross want of care and regard for the rights of others as to justify the presumption of willfulness, and also to show that if there was a failure to discover the danger of the deceased, such failure was owing to recklessness of the company's servants in the management of its train.

2. If an engineer of a railway company, knowing that persons are accustomed to cross the track between the streets of a large and crowded city, drives his engine forward recklessly, or with indifference as to whether such persons are injured or not, and at a rate of speed greatly in excess of that limited by a city ordinance, an injury thereby inflicted upon one of such persons, even though he be a trespasser, will be regarded as the result of "such gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness."

3. Same—*contributory—willful and wanton.* Contributory negligence on the part of the plaintiff is no excuse for wanton and willful negligence on the part of the defendant. When wanton and willful negligence is charged and proved, it makes no difference to what extent the person killed or injured was guilty of a want of care.

4. Same—*contributory—when no defense.* Although the injured party may be guilty of contributory negligence, he may, nevertheless, recover for the injury if the defendant could have avoided the infliction of the same by the exercise of ordinary care. So if the engineer upon a locomotive could have easily seen a person on the track, or about to cross the same, in time to have averted the injury to him, and failed to do so through gross recklessness or carelessness, when the

exercise of ordinary care would have discovered the danger and averted the injury, the contributory negligence of the person injured, such as that of being a trespasser on the track, can not be relied on as a defense.

5. SAME—*to trespasser—liability for.* Where a trespasser upon the track of a railway company, or person attempting to cross its track at a place not a public highway crossing, is injured or killed by a passing train, the company will be liable, if it, through its servants, is guilty of such gross negligence as evidences willfulness or wantonness.

6. SAME—*evidencing willfulness or wantonness.* Gross negligence evidencing willfulness or wantonness is such gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness, or to imply a disregard of the consequences, or a willingness to inflict injury.

7. RAILROAD—*allowance of footmen on right of way.* The mere passive allowance of footmen to travel along the right of way of a railway company does not impose upon the company the duty to provide against danger of accident to which they may thereby expose themselves; yet if the company, directly or by implication, induces persons to enter on and pass over its right of way, it may thereby assume an obligation that it is in a safe condition.

8. EVIDENCE—*admissible when offered.* On the trial of an action against a railway company for causing the death of plaintiff's intestate, the court allowed the plaintiff to prove that persons were in the habit of crossing the railway track at the place where the deceased was killed, which proof was admitted before the defendant showed that there was no public crossing at the place of the accident: *Held,* that there was no error in admitting the evidence at the time it was offered.

9. A declaration in a suit against a railway company to recover for the killing of plaintiff's intestate contained five counts, the third of which charged negligence in the running of the defendant's train at a greater speed than that limited by an ordinance of the city where the injury occurred, and the fourth charged a neglect of the company to ring a bell, as required by another ordinance, under which the ordinances were admitted in evidence, but the court afterward withdrew such counts from the jury and proceeded with the case under one of the other counts, and no motion was made to exclude the ordinances: *Held,* that they were properly admitted at the time they were given in evidence.

10. PRACTICE IN THE SUPREME COURT—*error does not always reverse.* In such case, defendant objected to the reading of the ordinances in the plaintiff's argument, and asked the court to direct the jury to disregard them as evidence, which objection and request were denied. The record showed that defendant's counsel, in his opening statement,

to the jury, admitted that the city ordinance prohibited the running of trains in the city at a greater speed than ten miles an hour, and that the train which killed the intestate was traveling at a greater speed than that so limited, and the ordinance as to the ringing of the bell was not read in the hearing of the jury: *Held*, that the ruling of the court, even if technically erroneous, could have done the defendant no harm.

11. Practice—*directing what the verdict shall be.* Where there is evidence tending to show the plaintiff's right to recover, or in support of the material allegations of his declaration, an instruction to the jury to find for the defendant is properly refused.

12. Instruction—*assuming existence of controverted facts—singling out circumstances.* Instructions which assume the existence of facts about which there is a controversy, and which single out and give prominence to a single circumstance as characterizing the defendant's conduct, instead of leaving it to the jury to pass upon such conduct upon a review of all the facts and circumstances, are properly refused.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

This is an action on the case begun on September 28, 1886, in the Superior Court of Cook County, by the appellee, as administrator of the estate of Philip Bodemer Jr., deceased, to recover damages for the death of said Philip Bodemer Jr., who was killed, while trying to cross the tracks of the appellant company at a point between Twenty fifth and Twenty sixth Streets in the city of Chicago.    The trial in the court below resulted in verdict and judgment for $3000.00 in favor of the plaintiff, which judgment has been affirmed by the Appellate Court, and the case is brought here by appeal from the latter court.

The accident occurred on September 6, 1886.    At the place where it happened the tracks of the appellant run north and south; and 25th and 26th Streets which cross said tracks run from east to west, the former street being north of the latter. There is much travel on these streets, and the locality in question is occupied with business houses and much frequented

during the day by men and teams. The appellee, the father of the deceased, lived on Wentworth Avenue west of the railroad tracks and north of 25th Street and between that street and 24th Street. The deceased, who was a boy about nine years old, and his older brother, Fred., who was about twelve years old, had been east of the tracks on Butterfield Street between 24th and 25th Streets, and at about five o'clock in the afternoon came to 25th Street, in order to cross the tracks there and go home. A long and noisy freight train was going southward on one of the eastern tracks. The boys walked southward towards 26th Street along the alley east of the tracks until the last car of the freight train had passed. The older brother then crossed the tracks, going to the west, in safety; but the younger, while attempting to follow his brother in crossing the tracks from the east to the west, was struck by the engine of a passenger train, going at great speed from the south to the north upon one of the tracks west of that on which the freight train had passed, and was killed. The place where he was killed was about 125 feet north of 26th Street.

The declaration contained five counts. The first charged, that the defendant so carelessly and improperly drove and managed the engine and train and ran the same at so great a speed that, through the negligence and improper conduct of its servant, the deceased was struck and killed. The second count alleged, that defendant drove its engine upon the railroad up to, upon and across the public street (25th Street) at the crossing of the same by the said railroad and that no bell of at least 30 lbs. weight was rung, or whistle sounded at the distance of 80 rods from the crossing, or kept ringing or whistling until the crossing was reached, contrary to the statute, etc. The third count sets out an ordinance of the City of Chicago, prohibiting passenger trains from running faster than 10 miles an hour, and freight trains from running faster than 6 miles an hour, and charges that the defendant, not regard-

ing the ordinance and grossly neglecting its duty, recklessly drove its locomotive and passenger train at a rate of speed greatly in excess of 10 miles an hour along its railroad between 25th and 26th Streets, although its agents in charge thereof well knew that the part of the tracks between said streets was frequented by many and divers individuals, who were accustomed to go upon and along and across said tracks at said place; and that, by reason of the recklessness and gross negligence of said agents, the deceased was killed, etc. The fourth count sets out an ordinance of said city requiring the bell of each locomotive to be rung continually while running in said city, (except in a certain locality other than that where the accident occurred,) and charges that said engine and train did not ring a bell continually while running over its track between said streets, by reason of which neglect the deceased was struck, etc. The fifth count alleges that the defendant was driving its locomotive towards a certain point on its railroad near the crossing of 25th Street, and while the deceased, who was a minor under the age of ten years, was "then and there and at said aforementioned point upon said railroad attempting to cross said railroad," the engineer, although he knew that persons were in the habit of passing across and along the track at and near said place, between 25th and 26th Streets, "and although, while at a great distance from said certain point aforesaid upon the railroad of the defendant, he saw divers persons near to that track of defendant's railroad upon which he was at that time driving his engine, and although he saw said Philip Bodemer Jr., upon and between said tracks, upon which he was at that time driving said engine, said Philip Bodemer Jr., being at that time at a great distance from said engine, yet the said servant of the defendant wantonly, recklessly and with gross negligence drove said engine and train at a very great rate of speed upon and along said railroad of the defendant, and towards said Philip Bodemer Jr., and towards and across said certain place, and did not make reason-

able or efficient effort to avoid causing his said engine to strike the said Philip Bodemer Jr., nor did he give adequate, sufficient or timely warning to the said Philip Bodemer Jr., in order that he might avoid being injured by the approach of said engine, and by and through the gross and wanton neglect and improper conduct of the defendant," the locomotive struck the deceased, and killed him.

After all the evidence of both the plaintiff and the defendant had been introduced, the defendant made a motion to exclude the evidence, but the motion was overruled, and exception was taken. The plaintiff asked no instructions, and none were given on behalf of the plaintiff. The defendant asked the court to give 26 instructions. All of these were refused except the second. The first of the instructions so refused was as follows: "The jury are instructed that the evidence is not sufficient to sustain a verdict for the plaintiff, and your verdict should, therefore, be for the defendant." The second instruction, the only one given, was as follows: "The jury are instructed that there can be no recovery under the first, second, third and fourth counts of the declaration." The court, at the request of counsel for the defendant, required the jury to find specially upon certain questions of fact, and their findings are set out in the record.

Mr. Pliny B. Smith, for the appellant:

The plaintiff can recover only upon the case stated in his declaration. *Railroad Co.* v. *McKee*, 43 Ill. 119; *Bloomington* v. *Goodrich*, 88 id. 558; *Railway Co.* v. *Stark*, 38 Mich. 714.

A trespasser upon the private right of way of a railway company can not recover for an injury suffered there, unless the same was wantonly or willfully inflicted. *Railroad Co.* v. *Godfrey*, 71 Ill. 500; *Railroad Co.* v. *Hetherington*, 83 id. 510; *Blanchard* v. *Railroad Co.* 126 id. 417.

It is the doctrine of this State that the frequent use by the public of railroad tracks as a foot path does not impose any

duty toward the people so using the tracks, or change the relations of the parties in any way. *Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Blanchard* v. *Railroad Co.* 126 id. 417.

Signals are for the benefit of travelers upon the public highway, and not for trespassers on the private right of way and off from a street crossing. *Railway Co.* v. *Jacobs,* 20 Ill. 483; *Evans* v. *Railroad Co.* 62 Mo. 49; *O'Donnell* v. *Railroad Co.* 6 R. I. 211; *Railroad Co.* v. *Godfrey,* 71 Ill. 508.

Mr. Joseph S. Kennard, and Messrs. Brandt & Hoffman, for the appellee:

On the whole case the plaintiff is entitled to recover. *Railroad Co.* v. *Gregory,* 58 Ill. 226; *Railroad Co.* v. *Murray,* 71 id. 601; *Railroad Co.* v. *Becker,* 84 id. 483; *Gavin* v. *Chicago,* 97 id. 66; *Kay* v. *Railroad Co.* 65 Pa. St. 272; *Taylor* v. *D. & H. Co.* 113 id. 162; *Ernst* v. *Railroad Co.* 39 N. Y. 61; *Byrne* v. *Railroad Co.* 104 id. 362.

Even if the intestate was a trespasser on defendant's track, the company is liable if its negligence was willful. *Railway Co.* v. *Fitzsimmons,* 22 Kan. 686; *Railroad Co.* v. *Stout,* 17 Wall. 657; *Keefe* v. *Railway Co.* 21 Minn. 207; *Daly* v. *Railroad Co.* 26 Conn. 591; *Marble* v. *Ross,* 124 Mich. 44; *Railway Co.* v. *Sympkins,* 54 Texas, 615; *Railroad Co.* v. *Lewis,* 79 Pa. St. 33; *Railroad Co.* v. *Kellam,* 92 Ill. 245; *Railroad Co.* v. *Hogarth,* 38 id. 370; *Railroad Co.* v. *Triplett,* 38 id. 482.

If the engineer saw that the intestate did not intend to get off the track, and there was time enough to stop the train, contributory negligence can not be relied upon in such a case; neither can it in any case where the action of the defendant is wanton, willful or reckless in the premises, and injury ensues as the result. 2 Thompson on Negligence, 1160; Cooley on Torts, 674; Beach on Contributory Negligence, 29; *Hartfield* v. *Roper,* 21 Wend. 615; *Vandegrift* v. *Rediker,* 22 N. J. L. 185; *Railroad Co.* v. *Adams,* 26 Ind. 76; *Mulherrine* v. *Railroad Co.* 81 Pa. St. 336; *Railroad Co.* v. *McCluse,* 26 Ind.

370; *Norris* v. *Litchfield*, 35 N. H. 271; *Daly* v. *Railroad Co.* 26 Conn. 591; *Railroad Co.* v. *Donahoe*, 75 Ill. 106; *Coal Co.* v. *Taylor*, 81 id. 590; *Claxtons* v. *Railroad Co.* 13 Bush, 636; *Brown* v. *Railroad Co.* 50 Mo. 461; *Railroad Co.* v. *Davis*, 18 Ga. 679; *State* v. *Railroad Co.* 52 N. H. 528; *Cooper* v. *Railroad Co.* 44 Iowa, 134; *Kenohacker* v. *Railroad Co.* 3 Ohio St. 172; *Monroe* v. *Leatch*, 7 Metc. 274; *Railroad Co.* v. *Miller*, 25 Mich. 288.

Mr. Chief Justice Magruder delivered the opinion of the Court:

It is assigned as error, that the trial Court refused, at the conclusion of the testimony on both sides, to instruct the jury, as then requested by the defendant, to find for the defendant. The position of the appellant is that the deceased was a trespasser upon its right of way, attempting to cross the tracks where there was no public crossing. It has been held that, where a trespasser upon the tracks of a railroad company is injured, the company is not liable, unless the injury was wantonly or wilfully inflicted, or was the result of such gross negligence as evidences wilfulness. By withdrawing the first, second, third and fourth counts from the consideration of the jury and submitting the case upon the fifth count, the court assumed that the deceased was a trespasser at the time of his death, and required the jury to find that the injury was inflicted wantonly and wilfully, or with such gross negligence as showed wilfulness.

The evidence of the plaintiff tended to show that there were public street crossings over appellant's tracks at 26th, 25th and 24th Streets; that the passenger train, which struck the deceased, was travelling at the rate of from 30 to 35 or 40 miles an hour; that there were no gates where 26th Street crossed the tracks; that the tracks were laid upon what was called Clark Street, running directly south from 22nd Street; that there were two road-ways along the east and west sides

of the tracks; that there were no fences between these road-ways and the tracks; that the public drove along these road-ways, running north and south, with wagons, and people passed up and down upon them; that wagons drive up to the tracks upon these road-ways between 26th and 25th Streets, and unload the cars, standing there, on the tracks; that "the wagons do not drive in there between the tracks except when they are unloaded;" that there are houses on the east side of the tracks; that upon the west side of the tracks, fronting upon the strip of ground called Clark Street and consisting of the two road-ways and the tracks between them, are a saloon, a rag-shop, carpet shop, stone yard, packing house and ice-house, all located between 26th and 25th Streets; that many people pass there, going across the tracks to the rag-shop and packing house, every day; that no bell was rung on the engine of the passenger train, which killed the deceased; that a whistle was blown twice, giving two short, sharp sounds when the engine of the passenger train was about 5 or 10 feet from the deceased, or, as some of the witnesses express it, that the deceased was struck at the same time when the whistle was blown; that the deceased when struck was thrown into the air several feet; that the engine which struck him did not stop until it reached 24th Street, about two blocks north of the place of the accident; that three boys, who were on an empty freight car, standing on the tracks about a car's length south of 25th Street, witnessed the killing of the deceased, and one of them saw him on the track before he was struck.

We are unable to say, that there was not evidence enough to justify the court in leaving it to the jury to say, whether or not the boy was killed by the wanton and wilful negligence of the company. The company introduced no evidence whatever to contradict the testimony of the plaintiff, except for the purpose of showing that the strip of land occupied by its tracks between 25th and 26th Streets was its private right of way, and not a public street. In answer to written questions calling

for special findings, submitted at defendant's request, the jury found that the tracks were straight for a considerable distance towards the south from the place of the accident; that a locomotive approaching that place from the south could be seen at a distance of 1000 feet; that the deceased did not step from behind the freight train immediately in front of the engine of the passenger train, but that he was about 125 feet from the engine when he stepped upon the track. The jury answered, "we cannot say," to the question, "Did the engineer have time to stop his train after seeing deceased and before striking him?"

It was the duty of the engineer to exercise ordinary care to avoid striking the deceased, even if he was a trespasser. If it was impossible to stop the train in time, it may yet have been possible to have warned the plaintiff of his danger in time to enable him to get out of the way. The engineer "must use all the usual signals to warn the trespasser of danger." (2 Shear. & Red. on Neg. sec. 483—4 ed.) If the boy was 125 feet from the engine when he stepped upon the track, did the engineer see him? It was for the jury to answer this question. The company did not produce the engineer to say that he did not see the deceased, nor did it introduce any evidence upon that subject. It is not necessary to show by affirmative testimony, that the engineer's look was directed towards the boy. It is sufficient, if it appear from all the circumstances, that he might have seen him by the exercise of reasonable diligence and ordinary prudence. Why did he not see him? The track was straight and clear and unobstructed for a long distance. Others saw him. The boys on the freight car were distant more than 125 feet, and one of them saw the deceased "standing * * * on the track, right between the rails, not quite in the middle."

If the engineer saw the boy when he was at a distance of 125 feet, did he give him the signal of danger as soon as he ought to have given it? One witness, standing on 26th Street and waiting for the freight train to pass, swears that he heard

the whistle blow at the crossing; his testimony tends to show, however, that the engine had passed 26th Street before the whistle blew, and how far it had passed does not appear. But three witnesses swear that, when the whistle sounded, the engine was near enough to strike the boy, or only 5 or 10 feet from him. It was for the jury to weigh this evidence and consider its bearing. If they believed from the evidence, that the engineer saw the boy, and thereafter waited until the sound of the whistle could do no good, when, by whistling as soon as the deceased came upon the track, he could have warned him in time to enable him to escape, they were justified in finding for the plaintiff.

The jury were authorized to look at the conduct of the engineer in the light of all the facts in the case. It has been said: "What degree of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself, and in the nature of things, is so dependent upon the particular circumstances of each case as not to be susceptible of general statement." (2 Thompson on Negligence, 1264, sec. 53.) In *I. C. R. R. Co.* v. *Godfrey,* 71 Ill. 500, we said that where a trespasser is injured, the railroad company is liable for "such gross negligence as evidences wilfulness." We said the same thing in *Blanchard* v. *L. S. & M. S. R. R. Co.* 126 Ill. 416. What is meant by "such gross negligence as evidences wilfulness?" It is "such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness." (2 Thomp. on Neg. 1264, sec. 52.) It is such gross negligence as to imply a disregard of consequences, or a willingness to inflict injury. (Deering's Law of Negligence, sec. 29.) In *Harlan* v. *St. L., Kansas City & N. R'wy Co.* 65 Mo. 22, it was said: "When it is said, in cases where plaintiff has been guilty of contributory negligence, that the company is liable, if by the exercise of ordinary care it could have prevented the accident, it is to be understood that it will be so liable if, by the exercise of reasonable care, after

a discovery by defendant of the danger in which the injured party stood, the accident could have been prevented, or *if the company failed to discover the danger through the recklessness or carelessness of its employees, when the exercise of ordinary care would have discovered the danger and averted the calamity.*" Contributory negligence, such as that of a trespasser upon a railroad track, cannot be relied on "in any case where the action of the defendant is wanton, wilful or *reckless* in the premises, and injury ensues as the result." (*Bouwmeester* v. *G. R. & I. R. R. Co.* 63 Mich. 557; *Central R. R. Co.* v. *Denson*, 84 Ga. 774.) "Under the rule conceding the right of a free track to a railway company, in the event of an injury to a trespasser upon its line it can be held liable only for an act which is wanton, or for gross negligence in the management of its line which is equivalent to intentional mischief." (1 Thomp. on Neg. 449.) Although the plaintiff is guilty of negligence, he can recover, if the defendant could have avoided committing the injury by the exercise of ordinary care. (Deering's Law of Neg. sec. 31.)

Let these principles be applied to the facts of the case at bar. The train, which committed the injury was travelling at the unusual speed of 35 or 40 miles an hour in the crowded city of Chicago; over street crossings; upon unguarded tracks, so connected with a public street and so apparently the continuation of a public street as to be regarded by ordinary citizens as located in a public street; along a portion of such tracks where persons were known to be passing and crossing every day; in conceded violation of a city ordinance as to speed; and without warning of the approach of the train by the ringing of a bell. This conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness. It also tended to show, that, if there was failure to discover the danger of the deceased, such failure was owing to the recklessness of the company's servants in the management of its train.

We are of the opinion that the court committed no error in refusing to instruct the jury to find for the defendant. (*C. & A. R. R. Co.* v. *Gregory,* 58 Ill. 226 ; *I. and St. L. R. R. Co.* v. *Galbreath,* 63 id. 436.)

Appellant assigns as error the admission of testimony, that persons were in the habit of passing across the tracks at the place where the accident occurred. In cases where persons have travelled along a railroad right of way as a mere foot-path, using it for their own convenience, and where there was no evidence of any assent of the railroad company thereto except its non-interference with the practice, it has been held that such persons are to be regarded as wrong-doers and trespassers, and that a mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. (*I. C. R. R. Co.* v. *Godfrey, supra; Blanchard* v. *L. S. and M. S. R. R. Co. supra; I. C. R. R. Co.* v. *Hetherington,* 83 Ill. 510.) But in each of such cases it was conceded, that the place where the injury occurred was upon the right of way of the railroad company, and that the party making use of such right of way knew it to be the exclusive property of the railroad company for the purpose of running its trains. But, in the case at bar, the testimony of the plaintiff tended to show, that the tracks, at the point where the deceased was killed, were laid in Clark Street, a public street of the city of Chicago. There were travelled road-ways constantly in use on both sides of the tracks, and several witnesses testified that the strip of land, which embraced the tracks in the middle and the road-ways on the sides, was called Clark Street, and regarded as a public street.

When the evidence on the part of the plaintiff had closed, the defendant introduced proofs tending to show that the strip in question was 120 feet wide ; that 100 feet in the middle of the strip, where the tracks were laid, was railroad right of way, but that 10 feet on each side of said 100 feet belonged to the

public, and were used by the public.  The strip in question was used partly by the public and partly by the railroad company.  The proof also tended to show, that for years the railroad tracks had been laid in Clark Street as far south as 22nd Street, though they had subsequently been moved somewhat to the westward.  The course of the tracks southward was such as to appear to be a mere extension of Clark Street. There was no fence, or other mark of separation, to designate what portion of the strip, 120 feet wide, belonged to the public and what portion belonged to the railroad.  There was proof tending to show, that, before any tracks were laid at all, there had been a foot-path in use from 22nd Street as far south as 25th Street.  As has already been stated, it also appeared that persons were allowed to come up to cars standing upon these tracks for the purpose of loading and unloading their wagons; and one witness stated that wagons drove upon or between the tracks for such purpose.

The books draw a distinction between cases, where there is a mere naked license or permission to enter upon or pass over an estate, and cases where the owner or occupant holds out any enticement, allurement or inducement to persons to enter upon or pass over his property.  (*Sweeney* v. *Old Colony and Newport R. R. Co.* 10 Allen, 368).  "A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but, if he directly, or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use; and for a breach of this obligation he is liable in damages to a person injured thereby." (Idem.) Though it is unnecessary to go so far as to hold in this case, that the facts hereinbefore recited amounted to an implied inducement on the part of the railroad company to the public to pass over its tracks, it is nevertheless quite manifest, that the surroundings were such as to give to the tracks the appearance of being located in a public street; and all the cir-

39—139 Ill.

cumstances of the situation were such as to lead those, who-
had occasion to frequent that neighborhood, to believe that
the tracks were in a public Street.    Hence, we are inclined
to the opinion, that the court did not err in admitting proof of
the passing of persons across the tracks, for the reason that
such proof was admitted before the defendant proved that the-
tracks were on its right of way, and while as yet the evidence-
of the plaintiff tended to show, in the absence of contradictory
proof, that the tracks were in a public street, or what was.
called and regarded as a public street.    If the tracks were in
a public street, the company was unquestionably under obli--
gations to "provide against the danger of accident" to those-
rightfully thereon. , After the defendant introduced its proof,
it did not move to exclude the particular testimony of the-
plaintiff as to the passing of persons over the tracks.  Whether,
therefore, after the ownership of the company had been shown,
persons, who had been proven to be in the habit of crossing
the tracks under the belief that they were crossing a public
street, were or were not such wrongdoers, as to relieve the-
company from liability for injury to them, is a question which
need not be further considered.

The appellant further objects that the court should have
excluded the ordinances as to the speed and the ringing of a.
bell, as these ordinances are not described in the fifth count-
of the declaration.    (I. C. R. R. Co. v. Godfrey, supra.)  The-
ordinance as to speed was described in the third count, and
the ordinance as to the ringing of the bell was described in
the fourth count, and they were properly admitted under these
counts at the time when they were admitted.    After defendant
introduced its proof, it made no formal motion to exclude the-
ordinances, though it objected to the reading of them to the-
jury in the argument of plaintiff's counsel, and asked the court
to instruct the jury to disregard them as evidence.    We do-
not think that the action of the court in this particular, even
if it be regarded as technically erroneous, could have done-

the defendant any harm, for the reason that counsel for defendant admitted in his opening statement to the jury that the city ordinance prohibited the running of trains in the city at a greater rate of speed than ten miles an hour, and also admitted that the train which killed the deceased was travelling at a greater rate of speed than ten miles an hour; and for the further reason, that the ordinance as to the ringing of a bell was not read at all in the hearing of the jury, and counsel for defendant allowed testimony, that no bell was rung, to be admitted without objection.

Furthermore, the action of the court in withdrawing from the consideration of the jury all the counts except the fifth was exceedingly favorable to the defendant. We do not think that the jury ought to have been told, that there could be no recovery under the third count, which described the ordinance as to speed.

Even if it be admitted that the deceased was a trespasser, the third count was sufficient to authorize the proof under it of such gross negligence as evidences wilfulness. The word, "reckless," implies heedlessness and indifference. If an engineer, knowing that persons are accustomed to cross a track between the streets of a large and crowded city, drives his engine forward *"recklessly,"* that is to say, with indifference as to whether such persons are injured or not, and at a rate of speed *"greatly"* in excess of that limited by a city ordinance, an injury thereby inflicted upon one of such persons, even though he be a trespasser, will be regarded as the result of "such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness."

The views already expressed dispose of appellant's objections to the refusal of instructions numbered 3, 4, 5 and 8 asked by the defendant. Refused instruction No. 7 was not based upon the evidence. It submitted to the jury the question whether or not the deceased was using the tracks as a play ground. We find no evidence in the record tending in the slightest de-

·gree to show, that the tracks were used for any such purpose. Refused instructions numbered 9, 10, 11, 12, 15 and 17 merely related to the degree of care which the deceased was required to exercise, but, as the case was submitted to the jury upon a declaration which charged wanton and wilful negligence, it made no difference to what extent the deceased was guilty of a want of care. Contributory negligence on the part of the plaintiff is no excuse for wanton and wilful negligence on the part of the defendant. Refused instructions numbered 24 and 25 assumed the existence of facts about which there was a controversy, and each singled out and gave due prominence to a single circumstance as characterizing the defendant's conduct, instead of leaving it to the jury to pass upon such conduct upon a view of all the facts and circumstances in the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CRAIG and BAILEY, JJ., dissenting.