## Illinois Central Railroad Company v. Elvira James.

<div style="float:right">67    649<br>s93    296</div>

1. RAILROAD COMPANIES—*Implied Invitations to Cross Their Tracks.* —The stopping of a passenger train for the purpose of taking on or letting off passengers is an implied invitation to people to pass over such tracks as are necessary in order to get on or off of such train, but the invitation is only to persons who have a desire to do one of these things and is not an invitation to people whose only object in crossing such tracks is to do that with which the railroad company has no connection.

2. SAME—*When Persons Are Not Acting under an Invitation in Crossing Tracks.*—If a person, in going to a railroad station house for the purpose of sending a message from a telegraph office kept there, steps upon the premises of the company at a place designated by it as a crossing for such purpose, such person is acting under an invitation to cross; but not so if such person is going, not to the telegraph office, but to meet the operator while on his way to his place of business.

3. ORDINARY CARE—*What is Not an Exercise of.*—A person standing close to a railway station at which two passenger trains have just arrived, and near to which a freight train apparently about to pass the station is standing, and who suddenly steps onto the track along which he knows the freight train will pass, is not in the exercise of ordinary care for his personal safety.

4. LICENSE—*To Cross Tracks Imposes no Obligation.*—A mere naked license or permission to pass over the tracks of a railroad company, will not create a duty or impose an obligation on the part of the company to provide against the danger of accidents.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded. Opinion filed January 7, 1897.

SIDNEY F. ANDREWS, attorney for appellant; JAMES FENTRESS, of counsel.

Rosenthal, Kurz & Hirschl, and S. S. Page, attorneys for appellee; Andrew J. Hirschl, of counsel.

Mr. Justice Waterman delivered the opinion of the Court.

This is an action by Miss Elvira James, to recover damages from the defendant, the Illinois Central Railroad Company, for alleged personal injuries received from being struck by a locomotive engine belonging to the defendant, and operated by its servants, while she was crossing its track in the city of Chicago, at or near a station called Grand Crossing.

The night previous to the accident, appellee remained with her sister at a hotel known as the "Kemp House." Upon the following morning she left the hotel, intending to go to the station house of the Illinois Central Railroad for the purpose of sending thence a telegraph message. Leaving the hotel at about 6:30, she started to walk down the walk that led to a walk that ran parallel with the Fort Wayne tracks.

While thus walking, appellee remembered that Mr. Easley, the telegraph operator, would not be at the station quite so early, so she thought she would cross the Illinois Central railroad tracks, walk westward, and meet him, as he was accustomed to come that way. She says that she went along the walk that ran parallel with the Fort Wayne tracks until she came within three or four feet of the Illinois Central tracks; that on nearing these, she noticed a passenger train at the depot, letting off and taking on passengers, and she thought that it would not be prudent for her to undertake to cross appellant's tracks before that train would leave the depot, so she stopped there, as she thinks, about a minute; that there was then a freight train standing south of 76th street, and a train coming from the south approaching the crossing, and also a passenger train on the farthest track west of the depot, and she, appellee, thought she had better wait, and when this train—that is, the passenger train—started to leave the depot, she started to move toward the

tracks, and that just as she stepped on the rail of the second track, a freight train approached her, and that is all she can remember; that before she was struck by the freight train, she saw it south of 76th street; that it was then standing still.

It appears that as she stood waiting to cross, there was one suburban train going north on appellant's tracks, and another suburban train of appellant's going south; that the freight train by which she was struck passed along between the depot and the suburban passenger train, which was unloading passengers on the third track from the place where appellee stood.

The freight train which struck appellee was moving at the time, about six miles per hour. Proceeding westward, appellee, as soon as the passenger train going south had passed, stepped onto the track along which the freight train was going, when that train was only a few feet away. As she stepped out, the engineer of the freight train saw her, gave two or three short blasts upon the whistle, reversed his engine, and did all that he could to stop the train.

There seem to have been six or eight people standing alongside of appellee before she started to cross the track, two of whom, as the engine struck her, ran to her assistance, reaching and holding her from falling to the ground, notwithstanding which, she was so bruised and sprained as to be seriously and permanently injured.

Appellee testified that the place where she was standing and attempted to cross the Illinois Central tracks, was a little south of the tracks of the Pittsburgh & Fort Wayne; and where there was a plank walk which had for some time previous been used by people who desired to cross over the tracks of appellant.

Appellee introduced in evidence a dedication to the Town of Hyde Park, for street purposes, of the ground where this plank walk lay, and also an acceptance of such street by the authorities of the town, but did not show that the parties so attempting to dedicate were at any time the owners of the ground.

Appellant contended that the walk in question just south
of the tracks of the Pittsburgh & Fort Wayne Road, was
not within the limits of any street, but was upon lands be-
longing to it, appellant, and also insisted, and gave evidence
tending to show, that the place where she was injured was
between the tracks of the Pittsburgh & Fort Wayne Rail-
road and those of the Lake Shore & Michigan Southern
Railroad; and the decided proponderance of the evidence in
the case is, that the accident occurred at the place last men-
tioned. Whether the accident happened south of the tracks
of the Pittsburgh & Fort Wayne Railroad, or between them
and the tracks of the Lake Shore & Michigan Southern
Railroad, appellant contends that in either case, it hap-
pened upon its private premises, and that the appellee was,
when injured, a trespasser, she not having gone thereon by
invitation, express or implied, of the company.

Appellee states that as she stood before attempting to
cross the railway, there was a suburban train unloading and
taking on passengers; that this train was going south, and
was on the third track from where she stood; that another
suburban train going north was on the fourth track from
where she stood; that the locomotive of the train going
south crossed the crossing first, and that going north soon
followed. Appellee proceeds: " Of course I did not see that
pass, because before that I was struck by the freight train.
The freight train passed in—was going to pass in—between
the depot and the passenger train."

It thus appears that appellee started to go over these
tracks as soon as the suburban train going south had passed
by, and before she had seen the suburban train going north
go by.

Appellee has called our attention to the fact that in the
opinion first written in this case, we fell into the error of
thinking that one of the suburban trains passed between
the freight train and the depot, and that appellee stepped
out from behind this suburban train on to the track upon
which the freight train was proceeding. The fact is, that
as appellee stood, before attempting to cross the tracks, the

track next to her was clear, and that on the second track from her she saw, at 76th street, a distance of from four to five hundred feet, a freight train standing, apparently about to proceed northward, that is, along the second track from and between her and the point to which she wished to go.

Appellee says that two juries have declared, and the Circuit Court has confirmed, " that appellee took ordinary observation of the surroundings, looked when she crossed 76th street, saw a train standing, went on up to the defendant's tracks, looked south again, saw the freight still standing, saw the suburban train coming from each direction, waited about a minute, intent upon an opportunity to be given her by these suburbans to let her pass, and as soon as the opportunity was given, started to cross."

Appellee contends that under the circumstances, she had a right to expect that a freight train would not be run in between the suburban trains and the depot, certainly not without warning and at a considerable speed; and hence it did not occur to her to again look before stepping upon the tracks, and that the engineer of the freight train, as he was proceeding northward, had he looked, would have seen her standing and about to cross. Doubtless the engineer of the freight train, had he looked, would have, and we have no doubt did, see her standing, but whether he would have thought that she was intending to cross the tracks, can not be known. It by no means follows that persons standing at a railroad station, looking at a crossing, are about to pass over. Whether, however, the engineer thought appellee was intending to cross or not, is immaterial; in any event he should have given proper signals, and the preponderance of the evidence is that he did. However this may be, the question under consideration is not alone as to the negligence of the appellant, but in regard, also, to the conduct of appellee.

Had appellee, for the purpose of taking or departing from one of appellant's passenger trains, gone upon its tracks at a place by it designated for such coming or going, she would have been there by invitation of appellant.

So too, if, in going to its station house for the purpose of sending a message from a telegraph office kept there, she had stepped upon the tracks of appellant at a place designated by it as a crossing for such purpose, she would have been acting under its invitation; but in going, not to the telegraph office, but to meet the operator while on his way to his place of business, she was doing that, and making use of appellant's premises in a way it had not, either expressly or impliedly, invited her to do.

A passenger train stopping for the purpose of taking on and letting off passengers, is an implied invitation to people to pass over such tracks as are necessary in order to get on or off such train; but the invitation is only to persons who have a desire to do one of these things, and is not an invitation to people whose only object in crossing is to do that with which the railroad company has no connection.

We regard it as immaterial whether appellee was injured just south of the tracks of the Pittsburgh & Fort Wayne road, or between such tracks and those of the Lake Shore & Michigan Southern, even though it be conceded that the first named place was within the limits of a public street. She was where she was, not by any invitation of appellant, yet where there was every opportunity for her to see the approaching freight train; while the preponderance of the evidence is, that the freight train, proceeding northward, was giving all the signals required by law and ordinarily made use of to warn people of the approach of a train.

It is doubtless the case that it must be here presumed the jury found that such signals were not given. Granting that this was the case, it then appears that appellee, while standing close by a railway station at which two passenger trains had just arrived, and near to which a freight train, apparently about to pass the station, stood, suddenly stepped onto the track along which she knew the freight train, as it ran northward, would pass.

Appellee had lived in the vicinity of this crossing for some time; she must have been familiar with the fact that at railway crossings there is, at the time when trains are

arriving and departing, much noise arising from the ringing of bells and the hissing of steam, and that it was very easy for her, under such circumstances, to fail to notice signals made by the freight train which was standing just south of 76th street, and evidently about to proceed northward. She must have been aware that if the freight train was proceeding northward, as she had reason to think might be the case, she ran great risk in stepping upon the track along which it might be proceeding.

It is quite likely that appellee thought of none of these things; that, intent upon her desire to meet the telegraph operator before he arrived at, and while on his way to his office, she did not fully realize how dangerous a thing she did. Her act, however, is to be judged, not by what was running in her mind, but by what she knew, and therefore had reason to expect; and so considered, it is apparent that she did not exercise ordinary care.

We do not think that either of the learned counsel for appellee, or the plaintiff herself, would, if they knew that the wife or sister of one of them, was about, at this crossing, to step upon appellant's tracks under similar circumstances, regard such act as otherwise than extremely perilous.

There is nothing to show that the acts of appellant's servants, or either of them, were in any way wanton or reckless. It does not appear that the place south of the tracks of the Pittsburgh & Fort Wayne road, where appellee says she attempted to cross, appellant had ever invited the public to use, or knew that the public were using such place as a railroad crossing.

The Supreme Court of this State in L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596, says:

"In cases where persons have traveled along a railroad right of way as a mere footpath, using it for their own convenience, and where there was no evidence of any assent of the railroad company thereto, except its non-interference with the practice, it has been held that such persons are to be regarded as wrong-doers and trespassers, and that a mere

naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. I. C. R. R. Co. v. Godfrey, 71 Ill. 500; Blanchard v. L. S. & M. S. R. R. Co., 126 Ill. 416; I. C. R. R. Co. v. Hetherington, 83 Ill. 510. But in each of such cases it was conceded that the place where the injury occurred was upon the right of way of the railroad company, and that the party making use of such right of way, knew it to be the exclusive property of the railroad company for the purpose of running its trains."

In the present case it is not conceded that the injury to appellee occurred upon an exclusive right of way of the railroad company, but it was not shown that the injury took place within the limits of any right of way which the public had acquired either by dedication or use, and if it were, the fact would still remain that the conduct of appellee in stepping upon the track of appellant in the manner she did, was, and must have been known to her to be, if she stopped to think, perilous in the extreme.

Counsel urge that appellant was bound to know that she might be standing beside its track intending to cross; if this be granted, she was equally bound to know that the freight train she saw might proceed northward. As is insisted, her attention may have been absorbed so that she did not think of the freight train, or forgot it. Nevertheless, it was open to her view, and moving along a track over which she proposed to cross. This is not a case upon which reasonable men can doubt as to the dangerous conduct of appellee in this regard.

As to the claim that by user, the public had acquired a right to cross the tracks of appellant north of 67th street and south of the tracks of the Pittsburg & Fort Wayne railroad, the remarks of the Supreme Court in Blanchard v. L. S. & M. S. Ry. Co., 126 Ill. 416, are appropriate. It is there said :

" The fact that persons residing in the locality where the accident occurred had been in the habit of traveling upon the

right of way of the defendant and no measures had been taken to prevent it, did not change the relative rights or obligations of the deceased or the railroad company." See, also, Wabash Ry. Co. v. Jones, 45 N. E. Rep. 50.

The case is very different from what it would be had appellee been injured when about to take, or departing from, one of appellant's trains, or while on her way to its station for the purpose of transacting business it invited people to come there to do. In such case appellant would have owed to her a duty, which it did not under the circumstances. Had the jury considered the undisputed evidence in the case, it could not, under the instructions of the court, have returned a verdict for the plaintiff. It is quite likely that the jury did not understand such instructions; indeed, it is unfortunately the case, that under our system of written instructions, only as to the law, and the absence of any comment by the court upon the facts, jurors very frequently are unable to understand instructions given to them.

No one can fail to have sympathy for the plaintiff. The question is not, however, as to what sympathy should be bestowed upon her, but whether appellant shall be compelled to compensate her for injuries which she suffered by reason of her most obvious neglect to make use of ordinary care.

Counsel for appellee say that while they have no doubt the case appeals strongly to our sympathy, they ask for neither sympathy nor charity, but justice only—that is to say, that the law shall be administered without regard to persons; and counsel say that, " by the law of Illinois to-day, a person approaching a railway crossing and about to pass over the same, may be in the exercise of ordinary care, although he does not look, and although he does not listen to see whether trains are approaching." To this contention we can not agree; on the contrary, we think that every ordinarily prudent person does, whenever he approaches a railway crossing, look out for approaching trains, and that it is not an exercise of ordinary care to, when there is nothing to obstruct one's view, step in front of and so close

to a train proceeding at six miles an hour that he is knocked down by it; and while we agree with counsel that the question of ordinary care is one to be submitted to a jury, we do not assent to the proposition that whatever the circumstances, if the jury finds that the person injured was exercising ordinary care, the court is bound by such finding. It is the case, as appellee suggests, that a person may be slightly negligent, and nevertheless be still in the exercise of ordinary care; but we can not regard the conduct of appellee in stepping immediately in front of this freight train, as merely slight negligence, or as conduct which can be defined to be ordinary care. If the place where appellee attempted to cross was a regular crossing, her right undoubtedly was the equal of that of appellant. The question in such case would not be as to her right to go where she attempted to, but as to whether, under the circumstances, the exercise of such right at such a time was not negligence, and that of a high degree.

Counsel say, "It may be admitted that if plaintiff had looked south just before stepping on the track, she would have seen the train, and would have avoided it," and also say that she "looked south and saw the train still standing, saw the suburbans coming from each direction, waited about a minute, intent upon an opportunity being given her by these suburbans to let her pass, and as soon as the opportunity was given, started to cross."

We see no reason why she should not have looked south—indeed, in each direction—just before stepping on the track; and it appears to us that it was not an exercise of ordinary care to look south, see a train standing, wait a minute, during which time, as counsel say, the freight train proceeding at six miles an hour would have passed a distance of about 500 feet, and then, without looking again, to step immediately in front of the approaching train.

Reversed and remanded.