## Tillie Freitag, Appellee, v. Union Stock Yards & Transit Company, Appellant.

## Gen. No. 18,027.

1. CARRIERS—*injury to trespassers.* Where plaintiff, an employe of a packing house going from work, crosses defendant's tracks in the stock yards at the crossing of a private road instead of crossing over a viaduct provided for that purpose and is struck by a train, there being evidence that the train was moving slowly and that the flagman or trainman did not see plaintiff in time to prevent the injury, a judgment for plaintiff will be reversed since plaintiff was a trespasser, and defendant was not guilty of wilful or wanton negligence.

2. RAILROADS—*running trains over crossing which many people are using.* Defendant in a personal injury action is not guilty of wanton and wilful negligence in running trains on its tracks at a time when many pedestrians using a private road were crossing,

when it has provided a viaduct over the tracks for the purpose of pedestrians.

3. RAILROADS—*where crossing is connected with public street.* Where a railroad crossing is so connected with a public street as to be apparently a part of it and has been used by the public for many years, one who is injured in crossing is not held to be a trespasser.

4. RAILROADS—*trespassers.* A railroad company, in the operation of its trains, owes no duty to a trespasser upon its right of way except not to wantonly or wilfully injure him.

5. RAILROADS—*duty to people using crossing.* Where a place on a railroad company's right of way has been openly used jointly by the railroad and the public as a crossing, the railroad company owes to persons crossing at such places the duty of exercising reasonable care to avoid injuring them, and the failure to give required signals may amount to wanton or gross negligence.

Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed. Opinion filed May 9, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN BARTON PAYNE and JOHN D. BLACK, of counsel.

WILLIAM ELMORE FOSTER, BERT J. WELLMAN, ARTHUR A. HOUSE and FREDERICK SASS, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This appeal brings up for review a judgment rendered in favor of appellee (plaintiff) against the appellant (defendant) in a suit brought by the appellee for damages resulting from personal injuries sustained by her on the track of the defendant on December 27, 1904.

The declaration consists of 13 counts, including those added after the original declaration was filed, but the case was submitted to the jury upon the third additional count only. Prior to the trial suit was dismissed as against another defendant, the Chicago Junction Railway Company. Some of the counts were withdrawn by the plaintiff, and the court instructed

the jury that as to the others, excepting the one referred to, there could be no recovery. No cross-errors have been assigned to the action of the court in thus excluding from the consideration of the jury the matters set up in these other counts, and on this review of the case we are limited in the consideration of the basic right of the plaintiff to a recovery, so far as the pleadings are concerned, to the matters set forth in the one count. This count alleges in substance that the defendant was using certain grounds in the city of Chicago as stock yards; that it was the franchise holder and proprietor of a certain steam railroad with numerous tracks which ran into and through said grounds, and which it operated by its lessee, the Chicago Junction Railway Company; that the "railway tracks were intersected and crossed at grade or level, on said grounds, by a certain common public highway, road, street, foot path, crossing or public place open to the public, which had been constantly used by persons having work and business on said grounds and by the public for more than twenty years prior to the 27th day of December, 1904, for the purpose of ingress, egress, etc. * * * with the knowledge of the defendant;" that between the hours of five and six in the evening the "said intersection and crossing was daily used by thousands of pedestrians;" that on said day, between five and six o'clock in the evening, while the air was filled with snow and a high wind blowing, plaintiff and divers others were passing over said railroad tracks on said common public highway, road, street, foot path, crossing or public place open to the public, and that defendant, by its lessee, was then and there switching certain cars or trains of cars and was driving the same near and towards the said crossing, and the servants of the said Chicago Junction Railway Company then and there in charge of said cars or train well knew that the intersection or crossing was daily thronged with pedestrians at said hour and that the plaintiff and

Freitag v. Union S. Y. & T. Co., 180 Ill. App. 268.

said others were then and there passing over said railroad tracks on said intersection or crossing, and well knew that plaintiff was then and there in a position of danger and well knew that she could not and did not see said cars or train of cars and well knew that she could not escape from said danger; yet, disregarding its duty in the premises, knowingly, wittingly, wilfully and maliciously and with a wanton and reckless disregard for the rights of the plaintiff, the defendant, by its lessee, then and there ran, switched, drove and propelled the said cars or train of cars upon and against and over the plaintiff, whereby she was injured, etc. About a year before the accident the defendant had constructed over the tracks a large viaduct for foot passengers, the evident purpose of which was to enable pedestrians to get over the tracks without subjecting themselves to risk of injury. A sign 61 inches long and 47 inches high was placed over each approach to the viaduct, bearing upon it in large letters the words, "Dangerous crossing—Walk over viaduct—Crossing on tracks forbidden." Appellee testified that she had seen the signs on the viaduct but had never read them; that she could not read English; that she had asked a boy once to read one of the signs for her and that he said, "the viaduct was there for to go over if crossing was blocked."

The plaintiff was an employe of a packing house. About 5:45 P. M. on the day of the accident, after leaving her work, she reached the crossing of the tracks and a private road. The tracks were four in number. The road was enclosed on both sides by board fences which extended to the tracks. The entrance to the viaduct which plaintiff would have taken if she had not chosen to take the course she did, was passed by her before she reached the tracks. The roadway south of the tracks was paved with granite blocks and was about twenty-one feet in width, that portion of the roadway being used for team traffic. Alongside the

track and on the west side of it there was a cinder path. This path led to the stairway of the viaduct and extended alongside the stairway to what is spoken of in the record as the first or southernmost track. From the photographs introduced in evidence by consent during the submission of evidence by plaintiff, it would seem that the cinder path ended at the first track reached from the south. It is undisputed that the granite blocking ended just south of the south track, and that over the tracks there was a planked driveway. On the evening of the accident, which was dark and stormy, the plaintiff walked between the team road and the east end of the steps leading to the viaduct, and continued on north to the railroad tracks. When she reached the south track she found standing upon the track to the north a number of cars. The testimony of practically all the witnesses for the plaintiff, as well as the defendant, was to the effect that these cars upon this track completely blocked the crossing. The plaintiff testified that there was a space of about two or two and one-half feet left free and not covered by any cars; that she did not walk through this space, but could not tell why she did not do so; that she had on her head a knitted woolen garment, called a "fascinator," which reached down to her neck and was tied with strings about the neck.

At this time a train consisting of twelve cars and an engine was backing up upon the third track, other cars which previously had been attached to the train having been left on the second track, as heretofore stated. The plaintiff testified that she turned west about eight feet from the standing car (evidently the west car of those upon the second track and crossing), and then turned northwest upon the third track, where she was struck and received very serious injuries. She further testified that she saw no flagman. That a flagman was there is not disputed. The flagman testified that at the time of the

Freitag v. Union S. Y. & T. Co., 180 Ill. App. 268.

accident he stood at the west end of the standing car
with his lantern in his hand; that people were pass-
ing over the track and he was trying to warn them;
that he saw plaintiff come around from the south
side of the car, at an angle, not close enough to him so
that he could reach her, but about five or six feet away
from him; that she was following two men that were
hurrying across and trying to keep up with them, and
that he called to her to look out; that she did not stop
or look to the right or left, and that the backing train
was upon her just as she put her foot on the track on
which it was moving.

A switchman named Fox, who was a witness for
plaintiff, testified that he saw her walking from be-
hind the end of the standing car "at a pretty good
gait," a couple of seconds before she was struck; that
she walked right in front of the moving train; that
she was five feet from the moving train when he
saw her go by the end of the standing car and was
about thirty feet away from him. It seems to be
admitted, at least we find nothing in the record tend-
ing to show anything to the contrary, that the point
at which plaintiff was struck was thirty-one feet west
of the west line of the planked crossing. Fox's tes-
timony also is not disputed that his position at the
time of the accident was about three or four feet
west of the west side of the roadway and on track
No. 3; that he had a lighted lantern in his hand and
was signaling to the conductor to back the train
toward him on that track; that the conductor in
charge of the train was walking alongside of the
train.

There was evidence tending to show that many
pedestrians used the roadway, perhaps as many as,
if not more than, used the viaduct; also that there
were at the time of the accident several persons upon
the viaduct who crossed over it in safety.

It was admitted in the argument for the plaintiff,
as necessarily it must have been, that the plaintiff

at the time of the accident was a trespasser. The only count of the declaration upon which reliance is placed is what is known as the third additional count. This count, as heretofore appears, does not set forth specifically what acts of any employes of the defendant, or of its lessee, are claimed to be of such a character as to constitute wilful and wanton conduct. The facts of the case are entirely unlike those in other cases to which our attention has been called by the appellee. No ordinance as to speed was violated so far as the record shows. On the other hand, the train appears to have been going at a very slow rate. If it be assumed that there should have been a light upon the rear car during the switching movement, which is a matter of doubt, the absence of it did not constitute wanton negligence. The engineer and the fireman of the train are not claimed to have been at fault. It is insisted, however, that the flagman might have done more than he did to protect her. There is no contradiction of his testimony to the effect that the plaintiff passed him at such a distance that he could not have grasped her or prevented her by physical means from going upon the third track. He was at his place of duty under the circumstances, and was protecting the crossing from the south. The switchman, with his lantern, was also at the crossing, protecting it from the north, where he was signaling the train to back toward him. We do not think either of these men can be said to have been guilty of negligence, much less wanton conduct.

We do not understand counsel for appellee to argue that the evidence showed that there was a cinder path where the plaintiff was struck. On the other hand, it is said that the question is not whether or not there was a path, but whether people walked there in sufficient numbers to apprise the defendant of their probable presence there at that time of the day.

The case of *Lake Shore & M. S. R. Co. v. Bodemer*, 139 Ill. 596, is cited by the plaintiff. In that case a

nine year old boy was struck by a train on a private right of way between two streets in the City of Chicago. The train which committed the injury was traveling at the unusual speed of thirty-five or forty miles an hour over street crossings, upon unguarded tracks so connected with the public streets and so apparently the continuation of a public street as to be regarded by ordinary citizens as located in a public street, in conceded violation of a city ordinance as to speed, and without warning of the approach of the train by the ringing of a bell. It appeared that there were no gates where Twenty-sixth street crossed the tracks; that the tracks were laid upon what was called Clark street, running directly south from Twenty-second street; that there were two roadways along the east and west sides of the tracks; that there were no fences between these roadways and the tracks; that the public drove along these roadways, running north and south, with wagons to unload cars on the tracks between Twenty-fifth and Twenty-sixth streets. The court held that the engineer in such circumstances showed such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness and wantonness.

In the case now under consideration no ordinance was violated, and there was no proof that the engineer knew or had reason to expect that persons would be upon the private property of the defendant at the place where the plaintiff was injured. It is argued that the switchman was at fault, and that at this time of the day he should not have caused a movement of the train; in other words, that permitting the train to move under the circumstances was evidence of such gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness. We cannot agree in this conclusion. The defendant having provided a safe method for pedestrians to cross the track by way of the viaduct, we do not think that the presumption of wilfulness or wan-

tonness on its part may be indulged in if operations upon its tracks were not caused to cease at this time of the day.

In the case of *Pittsburgh, Ft. W. & C. R. Co. v. Callaghan,* 157 Ill. 406, the place of the occurrence was not on the private property of the railway company, and the party injured was not a trespasser.

In the case of *Chicago & A. R. Co. v. O'Neil,* 172 Ill. 527, the city ordinance was shown to have been violated. There was evidence tending to show that the place of the accident was a public place open to the public. That being so, the person injured was not as in the case before us, admittedly a trespasser.

In the case of *East St. Louis Connecting R. Co. v. O'Hara,* 150 Ill. 580, the tracks upon which the accident happened were not enclosed or separated from the street on the one hand, or the wharves of a ferry company on the other, but were so connected with the public street as to be apparently a part of it, and had been used by the public for many years. The rule with reference to conduct as respects trespassers did not apply.

The case of *Neice v. Chicago & A. R. Co.,* 254 Ill. 595, is also cited by the plaintiff. In this case the injured person was on the platform at a station of the defendant road; he was not there for the purpose of taking passage. It was held that he was a trespasser. He was struck by a train going at a rate between twenty-five and forty miles an hour at a place where the maximum rate of speed fixed by ordinance was ten miles an hour. The court said:

"There was no relation existing between him and the defendants which created a duty or obligation toward him as a passenger or one intending to take passage or transacting any other lawful business on the depot grounds, and it is true that ordinarily in the case of a trespasser the obligation of care to avoid injury arises at the time that his perilous position becomes known to those in charge of the train. (*Illinois*

*Cent. R. Co. v. O'Connor*, 189 Ill. 559; *Illinois Cent. R. Co. v. Eicher*, 202 Ill. 556; *Thompson v. Cleveland, C., C. & St. L. R. Co.*, 226 Ill. 542.) Upon the right of way of the railroad where the public are not invited or authorized to go for the transaction of business with the railroad company, those in charge of the train must have knowledge both of the presence of the trespasser and of his dangerous situation, but depot grounds and platforms provided by the railroad company for the use of the public in the transaction of its business, where persons have a right to be for legitimate purposes and where they may reasonably be expected, are quite different. If they are there for a legitimate purpose in connection with the business of the company they have a right to demand the exercise of reasonable care for their safety. If they are simply idlers, loiterers or trespassers the duty of the company is only to abstain from wilfully or wantonly injuring them.''

In the case of *Illinois Cent. R. Co. v. O'Connor*, 189 Ill. 559, as in the case before us, it appeared that the place of the injury was upon defendant's right of way and not upon a public street. There was no controversy over the fact that in the summer season persons in a greater or less number were in the habit and had been for several years, of crossing the defendant's grounds from the foot of Twenty-fifth street, in the city of Chicago, due east to the lake for the purpose of bathing; that this fact was known to the defendant and its employes operating the train at the time of the accident; that the plaintiff with others had gone to the lake shore and was returning by the same route at about nine o'clock at night, when on one of the tracks of the defendant he was struck by a flat car which was being backed northward. The evidence was conflicting as to the speed at which the car was moving, and also whether ordinances set out in the declaration were being observed, but the evidence tended to show that the speed of the backing train was some seven or eight miles an hour; that no

lights were displayed upon the rear car or bell rung or other warning given. There was no evidence to the effect, nor was it claimed, that any employe of the defendant in charge of the train saw or had knowledge of the fact that the boy was on the track or right of way. It was not denied that the plaintiff was at the time he received his injury a trespasser upon the track of the defendant. In passing upon the case the court said:

"This court is committed to the doctrine that a railroad company, in the operation of its trains, owes no duty to a trespasser upon its right of way or tracks except that it will not wantonly or wilfully inflict injury upon him, and we have frequently held that the mere fact that signals required by statutes and ordinances are not given, even though those operating its trains may have knowledge of the fact that persons have been in the habit of crossing its tracks or walking upon them at places other than public crossings or public places, will not amount to proof of wilful and wanton disregard of duty toward such trespassers."

Previous decisions to the same effect are *Illinois Cent. R. Co. v. Godfrey,* 71 Ill. 500; *Illinois Cent. R. Co. v. Hetherington,* 83 Ill. 510; *Blanchard v. Lake Shore & M. S. R. Co.,* 126 Ill. 416.

The court in the *O'Connor* case, *supra,* distinguishes it from the decisions to which reference has been made heretofore in this opinion, where the place "has been openly used jointly by the railroads and the public," or where, from the evidence, the ownership of the place is left in doubt, or where the accident occurred on a "public street or upon the planked tracks adjacent thereto," or where the evidence tended to show that the place of the injury was a public street of a city. *Chicago & A. R. Co. v. O'Neil,* 172 Ill. 527; *Chicago, B. & Q. R. Co. v. Murowski,* 179 Ill. 77; *Lake Shore & M. S. R. Co. v. Bodemer,* 139 Ill. 596. The rule is that the company owes to persons at such places the duty of exercising reasonable care to avoid

inflicting injury upon them, and the failure to give required signals may amount to wanton or gross negligence. In the *O'Connor* case, as in the one before us, the plaintiff was upon the defendant's right of way, not upon any business with the defendant—nor by any right or claim of right—but for his convenience. In that case it was conceded by the evidence that by putting himself to the inconvenience of walking a few blocks either north or south he could have crossed the tracks to the lake shore with safety. In the case before us it is clear from the evidence that the plaintiff, by using the viaduct placed over the tracks for her convenience, could have crossed them with safety. We are controlled by the decisions of the Supreme Court in similar cases heretofore mentioned and others of later date. *Illinois Cent. R. Co. v. Eicher,* 202 Ill. 556; *Feitl v. Chicago City Ry. Co.,* 211 Ill. 279; *Thompson v. Cleveland, C., C. & St. L. R. Co.,* 226 Ill. 542.

In our opinion the motion to direct a verdict for the defendant on the third additional count should have been given. It follows therefore that the judgment of the Superior Court must be reversed.

*Reversed.*