## Chicago, Burlington & Quincy R. R. Co. v. Ellen Johnson, Administratrix of Estate of Andrew B. Johnson, Deceased.

1. RAILROADS—*Running Trains at a Greater Rate than Allowed by Ordinance.*—The running of a train at a greater rate of speed than allowed by an ordinance of a city or village, especially through grounds thronged with people, is negligence so gross as to amount to a wanton and reckless disregard of the safety of the public.

2. SAME—*Failure to Use Ordinary Care Justified.*—Where a railroad company is guilty of running its trains through grounds thronged with people, wantonly, recklessly and in utter disregard of the rights of the people assembled, the mere failure on the part of a person injured to exercise ordinary care will not exempt the company from liability.

3. ORDINANCE DEFINING SPEED OF TRAINS—*Train Defined.*—Under an ordinance prohibiting the running of freight trains faster than six miles per hour, or passenger trains faster than ten miles per hour within the corporate limits, what is called a wrecking train, consisting of the engine, way car, three freight cars and a derrick car, is a freight train within the meaning of the term as used in the ordinance.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Henry County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the December term, 1893, and affirmed. Opinion filed May 22, 1894.

H. BIGELOW, attorney for appellant.

C. C. WILSON, attorney for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

This is an action on the case by appellee as administratrix of the estate of her deceased husband, Andrew B. Johnson, brought to recover damages for his death which was caused by a train of appellant on its depot grounds in the village of Kewanee on October 3, 1892. There was a trial and appellee recovered $1,500.

Appellant does not claim that there was any error committed in the course of the trial in the admission or rejection of evidence, or complain of the giving or refusal of any

instruction except the refusal of the first instruction asked by it. That instruction was as follows: "The jury are instructed that there is no evidence before them tending to show that the deceased, Andrew Johnson, before or at the time he went upon the railroad track where he was struck by defendant's wrecking train, looked to see, or took any precaution whatever to find out if the train was approaching him, and as this omission, with the fact that he undertook to cross the track at a place where it was not guarded by a watchman, and where there was no regular crossing, and where no flagman was required to be, and where none was stationed, constituted such negligence on his part as to prevent a recovery in this case by the plaintiff, therefore the jury will find for the defendant."

This instruction, if given, would have left nothing to be decided by the jury and nothing to be done by them except to obey its mandate and return a verdict for the defendant. The claim made in its support is that there was an utter failure on the part of the plaintiff to prove that the deceased exercised such care for his safety as would entitle her to a verdict, and that therefore the court should have given the instruction. This proposition is embraced in the assignment of error that the verdict was against the evidence, under which it is contended that the defendant was not proved guilty of any negligence, and that the negligence of deceased would bar a recovery; and these are the questions presented by counsel for our consideration.

Aside from some slight difference of opinion as to the speed of the train which caused the injury, and a question whether any signals were given of its approach, there was, practically, no conflict in the evidence. The facts proved were as follows: In the afternoon of October 3, 1892, the defendant had, on its depot grounds at Kewanee, an exhibition train of three cars, containing products of Nebraska, Kansas and Colorado. The station agent had sent notices about the town that the train would be there for exhibition, and had invited the people to come and see the exhibit. The station grounds were about 1,000 feet long and 500 feet

wide. There were two main tracks, the south one for trains going east and the north one for trains going west. South of the main tracks there was a passenger depot with a small park containing trees east of it and there were other tracks further south. There were also tracks north of the main tracks. Tremont street ran north and south across the tracks at the east end of the depot grounds. The exhibition train was placed on what was called the north stock yards track, on the north part of the grounds and west of Tremont street. Two or more box cars stood on the passing track south of the south main track, the east end of the east car being about fifty feet west of said street. In response to the invitation given, a great number of people visited the depot grounds to view the exhibition furnished by the defendant. At the time of the accident, which was about 5:18 P. M., there were from 200 to 300 men, women and children about the grounds, drawn there by the notice and exhibit. They came and went in all directions, across the grounds, and were on the tracks and elsewhere about the premises. The wrecking train came from the west on the south main track, and when nearing the station was running about forty or forty-five miles per hour. The speed of the train was reduced somewhat until the engine reached the depot building. There was some difference of opinion as to the rate of speed at that point. The conductor of the train estimated it at twenty miles per hour, while other witnesses thought it much faster. At that point the engineer put on steam and increased the speed of the train to about thirty miles an hour. The marshal and a policeman were trying to keep the people off the track, and to get them out of danger from the train. The engineer testified that he noticed children on the track when he was on the street crossing west of the depot, and could see people crossing the track going each way, but that the track was clear when he commenced working steam and increasing speed. The station agent, marshal and policeman, by strenuous efforts, got the children and others out of the way, but just at that time the deceased, who was coming across the

grounds from the south, came past the east end of the box cars to the track. He was going north to the exhibition train and was looking at that train. The box cars obscured the view to the west until within ten or eleven feet of the track. He walked across that space, and as he stepped on the track, seemed to realize the approach of the train. He threw up his hands and attempted to throw himself backward, but was too late. He was thrown in the air by the engine, and fell at the east side of Tremont street 130 feet from the place where he was struck. An ordinance of the village of Kewanee prohibited the running of freight trains faster than six miles per hour or passenger trains faster than ten miles per hour, within the corporate limits. What was called the wrecking train, consisted of the engine, way car, three freight cars and a derrick car.

It is argued that the wrecking train was neither a passenger nor freight train, and that hence its speed was not limited by the ordinance. It was a train used for transporting implements, machinery and materials, and was then being used to move them from Galesburg to Sandwich. It would seem just as reasonable to say that a train carrying gravel for ballast, iron and ties to be laid in the track, coal for use on the road or lumber for building a fence, station house or bridge would not be a freight train because the defendant would be transporting the property for itself, as to say that this was not a freight train because the implements were to be used to clear the track. We have no hesitancy in saying that it was a freight train.

The running of the train at the rate of speed shown by the evidence was a violation of the ordinance, and under the circumstances, was negligence of the grossest kind. To invite the public to the premises to witness an exhibition which the defendant wanted them to see for its own benefit and advantage, and then when the grounds were filled with men, women and children to run the train through the premises in defiance of law in the manner that it was done showed a recklessness and total disregard of public safety so indefensible that no excuse can be made on the part of

the defendant.   The argument that the engineer had a right
to run as he did because everybody had got off the track
by the time he reached the depot, and because he had a
right to assume that no one would get on the track before
him would always excuse every similar act by which the
safety of the public might be imperiled.   It amounts to
saying that if everybody else exercises the highest degree
of care the engineer need not exercise any.   An engineer
may safely assume that any one will get out of his way if
possible rather than be killed, and that no one will inten-
tionally court death by remaining on the track and dis-
puting the passage with him, but in view of the probability
of such accidents as this under the existing conditions, such
an assumption can afford no excuse.

The particulars in which it is claimed that the deceased
was negligent as stated in the instruction asked and in the
argument of counsel are that he did not go to Tremont
street to cross the tracks, and that he did not look for the
approaching train before he stepped on the track.   We see
no reason why he should have gone to Tremont street.
The grounds were all open, and the defendant had located
the exhibition train where it chose and had invited the
people to come and see it.   The deceased was going by a
direct route to the train in the enjoyment of a privilege
offered him, and the people generally were going and com-
ing in all directions across the grounds.  We see nothing in-
dicative of a want of ordinary care in the route chosen.
After he came past the obstructions to sight and hearing
there was a narrow space in which he could have seen the
approaching train, if he had been looking for it.   He was
looking at the exhibition train in front of him which he had
been invited there to see.   There was a crowd of people
about, who had also been invited there, and while his atten-
tion was taken by the exhibition train, the fact that he was
put off his guard to some extent, and for the brief space of
time that he was crossing from the freight cars to the track
it did not occur to him that he might be exposed to the
peril of a train rushing through the grounds in violation of

law and at a reckless rate, was not conclusive evidence of negligence.

There were witnesses who testified to the ringing of the bell on the wrecking train and giving signals by whistle, but there were others present who testified that they did not hear them, and it is evident that if they were given, deceased did not hear them.

The declaration charged that the train was run wantonly, recklessly and in utter disregard of the rights of the people assembled at the time. The evidence supported the charge, and proved negligence so gross as to amount to a wanton and reckless disregard of the safety of the public. As against such conduct, the mere failure to exercise ordinary care on the part of deceased would not exempt the defendant from liability. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132. If the deceased fell short of the standard of ordinary care for his safety, the verdict was justified on the ground that he did not thereby forfeit his right to life as against such recklessness. In view of all the circumstances, we find no good reason for relieving the defendant from responsibility, and being of the opinion that the court was right in refusing the instruction to find for defendant and in overruling the motion for a new trial, the judgment will be affirmed.