## The Illinois Central Railroad Company

*v.*

### Mary Eicher, Admx.

*Opinion filed April 24, 1903—Rehearing denied June 4, 1903.*

1. Railroads—*railroad company's duty to licensees and trespassers is the same.* A railroad company owes no duty to a person walking upon its tracks, either as a trespasser or a mere licensee, except to avoid willfully injuring him, and to use reasonable care to avoid injuring him after he is discovered to be in peril.

2. Same—*rights of trespassers and licensees are different from those of parties upon premises by invitation.* The rights of trespassers and licensees are entirely different from the rights of persons who are upon premises of a railroad company by invitation, express or implied, for a purpose connected with its business.

3. Same—*filling between tracks in switch yards not an invitation to the public to walk there.* Filling the space between tracks in switch yards with cinders level with ties is not an invitation to the public to use the yards for foot-paths, even though such use is permitted.

4. Same—*running train at prohibited speed does not raise presumption of gross negligence.* Running a train at a greater speed than is permitted by ordinance raises a presumption of negligence, but not of willful or gross negligence, although the particular circumstances, such as the rate of speed and the presence of a number of people, may tend to prove gross negligence.

5. Same—*what facts do not authorize a recovery for accidental death.* A recovery is not authorized under evidence that deceased was walking between the tracks as a mere licensee; that he was in a safe place until the train was so close that it could not have been stopped even if running at lawful speed, and that he stepped into danger after the engineer's view of him was cut off by the engine.

6. Instructions—*when it is error to give instruction referring to declaration.* It is error to give instructions authorizing a recovery upon proof of the negligence charged in the declaration, where the admitted facts require proof of willful or wanton injury to authorize a recovery, and the declaration charges mere negligence.

Magruder, C. J., dissenting.

*Illinois Central Railroad Co.* v. *Eicher,* 100 Ill. App. 599, reversed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. Joseph P. Robarts, Judge, presiding.

W. W. Barr, (J. M. Dickinson, of counsel,) for appellant.

William A. Schwartz, and Andrew S. Caldwell, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Ben Eicher, husband of appellee, was struck by the pilot-beam of an engine of appellant while walking on its right of way between the railroad tracks in the city of Carbondale on July 23, 1901, and was killed. Appellee was appointed administratrix of his estate and brought this suit to recover damages resulting from his death.

There were two counts in the declaration, in each of which it was averred that there was a cinder path between the double tracks of defendant's railroad, used by its employees and other persons as a walk, and that deceased was walking along said cinder path in the exercise of due care and caution for his own safety, and was killed by the negligent operation of the engine and train. Both counts charged negligence, generally, in the management of the engine and train, and in addition thereto the second count averred that the cinder path was generally used, and was a smoother road for pedestrians and a better walk than the public road alongside the right of way on the west; that there was an ordinance of the city limiting the speed of passenger trains to ten miles per hour; that the passenger train, which was known as the "Fast Mail," was running at a higher rate of speed than was permitted by the ordinance; that the deceased, while walking along the main track, hearing the whistle of the engine, looked back and stepped from the main track to the cinder path, and that he was struck and killed by the engine by reason of defendant's negligence. The defendant pleaded the general issue, and upon a trial there was a verdict for $2500, on which judgment

was entered. The Appellate Court for the Fourth District affirmed the judgment.

At the conclusion of all the evidence the defendant moved the court to direct a verdict in its favor, and presented an instruction for that purpose, which the court refused to give. The refusal is assigned as error, and the assignment raises the question whether there was evidence which, as a matter of law, fairly tended to prove the cause of action.

The accident was witnessed by several persons, including the postal clerk on the train and a switch hand standing on the tracks, who were called as witnesses by the plaintiff. The evidence on the part of the plaintiff, and all the evidence produced at the trial tending in any degree to prove the allegations of the declaration or sustain a cause of action, tended to prove the following facts: Something over half a mile north of defendant's depot and the public square in the city of Carbondale there is a switch tower and a railroad crossing, and from that point south there are double main tracks. Southbound passenger trains take the west track and northbound trains the east track. Between these two main tracks, from the switch tower to the depot and public square, there is a space a little over ten feet wide filled level with the tops of the ties with cinders and ballast, making a smooth, even walk and path, which is traveled and used by defendant's employees and others quite generally, both for business and pleasure. Persons who have occasion to go that way use the path, and people are accustomed to walk out along the path on Sundays for recreation. There is a public road adjoining the right of way on the west, leading into the public square at Carbondale, but the path between the tracks makes a better walk, especially in muddy weather. Between the tower and the depot there are junctions of branch lines or divisions with the main line, and there are also side tracks in addition to the two main tracks. At the time

of the accident the fast mail train due at Carbondale at
11:20 A. M. was approaching from the north. The day
was clear and the weather very warm. There was noth-
ing to obstruct the view of the train, or the view from
the train of any person on the track. The deceased was
walking from the north between the main tracks toward
the public square and depot. The train whistled north
of the switch tower, and at that point took the west
track. As the train approached, the deceased was a
short distance north of a switch stand which was a little
over seven hundred feet north of the depot. The train
was running about fifteen miles an hour, and there was
an ordinance limiting the speed of passenger trains with-
in the city to ten miles an hour. Until the train was
close to him the deceased was walking in the center
between the two tracks, and was entirely out of danger.
The engineer was on the right side of the cab, in his
place, and the head of the engine cut off his view of the
deceased about one hundred and twenty-five feet before
reaching him. As the train approached, the deceased
veered toward the track the train was on, and just be-
fore he was struck was seen by the postal clerk, a switch
hand and another witness to be in a position of danger.
The judgment of the postal clerk, in his testimony for
the plaintiff, was that the train was within one hundred
feet of the deceased when it was plain to be seen that
he was going toward the track, and that he was within
four or five feet of the engine when it seemed as though
he was close enough to be struck by it. Plaintiff's wit-
nesses differed somewhat in their opinions as to the dis-
tance from the train when he came close enough to the
track to be struck by the engine, but they agreed that it
was a very short distance. The switch hand testified
that at the time the deceased was struck he was wiping
the sweat off from his face; that he took a handkerchief
out of his right-hand hip pocket and wiped off the sweat
just as he was struck. The witness beckoned to him to

get away from the track and also called to him, but could not make him hear. The pilot-beam extended over the rail sixteen or eighteen inches,—about as far as the ends of the ties. No signal was given and the speed of the train was not checked.

A railroad company owes no duty to a person walking along its tracks without its invitation, either expressed or implied, except to refrain from wantonly or willfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril; and it makes no difference in that respect whether he is a trespasser, a mere licensee or one who is on the tracks by mere sufferance, without objection of the company. One who goes upon a railroad track by permission, or where permission may be implied from the circumstances, may be regarded as having a license, but one who is there by mere sufferance is not a licensee and may be a trespasser. In either case there is no duty toward him except to refrain from wantonly or willfully injuring him. (*Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 id. 596; *Illinois Central Railroad Co.* v. *Noble,* 142 id. 578; *Wabash Railroad Co.* v. *Jones,* 163 id. 167; *Illinois Central Railroad Co.* v. *O'Connor,* 189 id. 559.) In *Illinois Central Railroad Co.* v. *Godfrey, supra,* no distinction was made between a licensee and a trespasser, but the same rule was applied to both, and it was said: "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident." One who has permission or license to travel along the tracks takes it subject to the use of the road without reference to him. The license imposes no obligation to take precautions for his safety, or to run trains in any respect different from what they would be run if he was not there. He takes the premises as he finds them, with all the attendant dangers connected with their use, only subject to the

limitation that the company shall not inflict upon him wanton or intentional injury. (2 Thompson on Negligence, sec. 1713.) It has been said that railroad companies are engaged in the performance of public duties and represent the right and interest of the public in cheap, safe and rapid transit, and if they owed a duty to run their trains with reference to trespassers or licensees, to look out for them, to slacken speed and perhaps to stop wherever they have reason to expect them, the public would suffer and the public duty would not be discharged. (3 Elliott on Railroads, sec. 1250; 2 Thompson on Negligence, sec. 1705.) And in *Illinois Central Railroad Co.* v. *Hetherington*, 83 Ill. 510, the court said: "The safety of the traveling public demands that the right of way of a railroad company should be unobstructed." A railroad company has no right to disregard its obligations to the traveling public or disable itself from their full performance.

The rights of trespassers and mere licensees are entirely different from the rights of those who come upon the premises of a railroad company for a purpose connected with its business, where the invitation and the mutual interest raise a duty toward them. An invitation to come upon the premises at proper places for the purposes of business may be implied, but in this case the deceased was not upon the premises of the defendant for any such purpose. There is no controversy whatever over the fact that he was walking upon this path merely for his convenience, and that he was either a trespasser or there by sufferance, or, at most, there was a mere license to the public arising out of the fact that defendant had made no objection to the use made of the walk. All that was proved was, that the space between the two main tracks was filled with cinders and ballast level with the tops of the ties, so as to be smooth and firm, making a better way for walking than the public road adjoining, and that it was used by the employees of the

202—36

defendant and the public without objection. The fact that the space was so filled had no tendency to prove an invitation to the public to use the foot-path or that it was prepared for public use. It would be a wholly unwarranted assumption to say that defendant made the pathway for public use and invited the public into a place of danger for no benefit or advantage to itself and for no purpose in connection with its business, merely because it did not forbid the use of the path. The place was used by employees of the defendant and was within its switch yards. It was its duty to use reasonable care to provide a safe and suitable place for its employees to work. Railroad tracks within switch limits must be ballasted so as to render them reasonably safe for the use of employees in the performance of their duties, and an employer might be held liable for a failure to use such reasonable care. (*Lake Erie and Western Railroad Co.* v. *Morrissey,* 177 Ill. 376.) Defendant might be liable for a failure to perform that duty, and the fact that it did perform it is no evidence of an invitation to the public. The failure to object to the use did not amount to an invitation to the public to come upon its tracks and expose themselves to danger, or impose an obligation to run trains in any respect different from what they would be run if there were no such use. Defendant would not be justified in willfully or wantonly injuring a person upon the track, and in *Wabash Railroad Co.* v. *Jones, supra,* where the second and third counts charged that the engineer saw the plaintiff and recklessly and wantonly ran over him, we held that the plaintiff would have a right to recover for an injury so alleged, regardless of the question whether the engineer had reason to suppose that some person might be using the track as a path. In this case, however, there was no evidence tending to show a willful or wanton injury, or that the defendant did not use reasonable care to avoid injuring the deceased after he was seen to be in a position of danger. The evidence

introduced by plaintiff proved beyond question that the deceased was in perfect safety until the engine was so near to him that it could not have been stopped by any kind of effort that might have been made, even if not running faster than ten miles an hour, and that he veered toward the track into a position of danger after the view of him was entirely cut off from the engineer by the front of the engine.

It is argued that inasmuch as the train was running faster than ten miles an hour, as limited by the ordinance, there was a presumption of negligence on the part of the defendant, which would constitute a cause of action. It is true that such fact does raise a presumption of negligence, but it is negligence merely, which, as we have already seen, would not justify a recovery. In *Illinois Central Railroad Co.* v. *Hetherington, supra,* where a train was running at the rate of fifteen miles an hour in violation of an ordinance, it was held that the speed of the train could not alone be regarded as a sufficient reason for holding that the injury was willful or wanton, and the language there used was quoted and approved in *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 Ill. 416. The evidence did not tend to prove such conduct on the part of those in charge of the train as would create a liability against defendant.

The declaration alleged that the deceased was upon defendant's right of way and did not show that he was rightfully there, by invitation or otherwise, and charged mere negligence on the part of the defendant. Instructions given at the request of the plaintiff authorized a recovery upon proof of the negligence charged in the declaration, and they were not in accordance with the law. It is urged that the case was tried and submitted to the jury on the part of the defendant upon the question of willful or wanton injury, and therefore it cannot complain of the reference to the declaration. It is true that after the refusal of the court to direct a verdict,

general instructions were asked by the defendant, and given, requiring proof of a willful or wanton injury; but these could not remedy the effect of the instructions authorizing a verdict of guilty upon proof of mere negligence. The instructions are in irreconcilable conflict, and do not present any harmonious view of the law. While it has not been deemed cause for reversal that the jury have been referred to the declaration where they would not be misled by the instructions, the admitted facts in this case were such that a recovery could not be had upon proof of the negligence charged in the declaration. There was one instruction telling the jury that if the deceased was not a trespasser on the right of way and was exercising ordinary care, and the defendant was guilty of the negligence charged in the declaration causing his death, they should find the defendant guilty. There were two instructions to the like effect in case the jury believed that the defendant was guilty of the negligence charged in the second count of the declaration. Although the jury might believe that the deceased was not a trespasser but was exercising the right of a mere licensee or was on the track by sufferance of the defendant, there could be no recovery on account of negligence charged in the declaration. An instruction given at the instance of the plaintiff advised the jury that it was gross negligence on the part of defendant to run its trains through a town at a rate of speed prohibited by an ordinance. While the circumstances of a particular case, such as a high rate of speed and the presence of a number of people, may be evidence of gross negligence, it is not a rule of law that negligence in running a train at a rate of speed prohibited by an ordinance is gross. The error in giving these instructions was not cured by any instructions given on the part of the defendant.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.                    *Reversed and remanded.*

Mr. Chief Justice Magruder delivered the following dissenting opinion:

*First*—It is assigned as error by the appellant, that the court below refused to give the peremptory instruction, asked for by the appellant, to find it not guilty. This assignment of error involves the question whether or not there was evidence tending to support the cause of action, set up in the declaration.

Does the testimony tend to support the charge, that the appellant was guilty of negligence, which caused the injury to appellee's intestate? The second count of the declaration set up *in hæc verba* an ordinance of the city of Carbondale, which provided as follows, to-wit: "Sec. 1. It shall be unlawful for any railroad company or conductor or engineer, agent or other such employee of such railroad company, or other person managing or controlling any locomotive engine, car or train upon any railroad track, to drive, run or propel, within the limits of this city, any passenger train or car, at a greater rate of speed than ten miles per hour, or any freight train or car at a greater speed than six miles per hour; nor in any manner to obstruct the travel or passage along any sidewalk, street or alley of said city, by placing or leaving upon, or across such sidewalk, street or alley, any truck, locomotive, car or train of cars, or material or thing whatsoever, for a longer period than five minutes at any time, and immediately thereafter for the full period of five minutes such sidewalk, street or alley shall not again be obstructed in the manner aforesaid, under the penalty of not less than $5.00 nor more than $25.00 for each and every offense." This ordinance was introduced in evidence by the appellee upon the trial.

Section 24 of the act of 1874 in regard to fencing and operating railroads provides as follows: "Whenever any railroad corporation shall by itself or agents run any train, locomotive engine or car, at a greater rate of speed in or through the incorporated limits of any city, town

or village, than is permitted by any ordinance of such city, town or village, such corporation shall be liable to the person aggrieved for all damages done to the person or property by such train, locomotive, engine, or car; and the same shall be presumed to have been done by the negligence of the said corporation, or their agents: * * * *Provided,* that no such ordinance shall limit the rate of speed, in case of passenger trains to less than ten miles per hour, nor in any other case to less than six miles per hour." (3 Starr & Curt. Ann. Stat.—2d ed.—pp. 3279, 3280). Under this statute an injury, done to person or property in consequence of running a train beyond the speed limited by ordinance in an incorporated city, town or village, must be presumed to have been inflicted by the negligence of the railroad company, or its agents operating such trains. The presumption of negligence in such case is not conclusive, but is a *prima facie* one. That is to say, where the injury and the violation of the ordinance are proved, a *prima facie* case of negligence is made out against the company, and the *onus* is thereby thrown upon it to rebut the presumption of law arising upon the facts proved. (*Toledo, Peoria and Warsaw Railway Co.* v. *Deacon,* 63 Ill. 91; *Chicago, Burlington and Quincy Railroad Co.* v. *Haggerty,* 67 id. 113; *Illinois Central Railroad Co.* v. *Ashline,* 171 id. 313; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Feehan,* 47 Ill. App. 66).

In the case at bar, the proof shows that the passenger train, which struck and killed appellee's intestate, was traveling within the limits of the city, and at the point where the accident occurred, at the rate of fifteen miles per hour. Indeed, one of the witnesses testifies that it was traveling at the rate of twenty miles per hour, although some of the witnesses of appellant put the rate as low as twelve miles per hour. But the evidence is conclusive, that the train was traveling faster than ten miles per hour, which was the limit fixed by the city ordinance. There was a *prima facie* presumption, therefore,

that the appellant was guilty of negligence. Whether or
not the evidence, introduced by appellant, rebutted the
*prima facie* presumption, thus arising, was a matter for
the determination of the jury. The fact, that a presumption
of negligence existed, and that such presumption
would prevail, unless overcome by rebutting testimony,
showed that there was proof tending to establish the
charge of negligence against the appellant.

The next question is, whether the evidence in the
case tended to sustain the allegation in the declaration,
that the appellee's intestate was in the exercise of
due care and caution for his own safety at the time when
he received the injuries, which caused his death. The
ground, upon which it is claimed by the appellant that
the deceased was not in the exercise of due care and caution,
is that he was a trespasser upon the right of way
of the appellant company. The doctrine is invoked by
the appellant, that a railroad company, in the operation
of its train, owes no duty to a trespasser on its right of
way or tracks, except that it will not wantonly or willfully
inflict injury upon him.

The proof shows that, upon the right of way of the
appellant company for some distance north of its depot
and of the public square in the city, there were two
tracks. Passenger trains, coming from the north and
going south, passed over the track to the west, and passenger
trains coming from the south and going north
passed over the east track. Between these tracks was
a space some ten feet and several inches wide. This
space was filled with cinders and slag, made into a walk
for the passage of the employees of the railroad company,
and, it would appear, of the public generally. The
depot of the appellant was on the public square, and the
walk in question between the tracks extended up to the
public square, and to the depot, and past the depot. This
walk had for years been permitted by the railroad company
to be used as a means of approach from the north

to its depot and to the public square. A witness, named
Toler, engaged in the railroad mail service of the appellant company, testified as follows in regard to this trackway or path: "It is a cinder path; that path is used by
the railroad men and the public; all my life I have noticed people travel on that railroad track; well, if a person has any business in that part of town, especially if
they are in a hurry—I always take the railroad track
and I have noticed a good many other people that way;
I have traveled it myself; I think this cinder path extends up into Carbondale to the public square. As I
remember this cinder path is straight from the public
square to the junction, north."

A witness, named Wilkins, testified as follows: "The
trackway between the two tracks down that way is filled
up with cinders, making it a level walk; I worked at the
Illinois Central yards last July; I am not working there
now; this cinder walk was used by everybody that I saw
walking down that way; that trackway would extend up
to the public square—up to the depot and past the depot;
the depot in Carbondale is right on the public square;
* * * it is a good solid walk, a level nice walk; * * *
I always traveled that way to my work; * * * the
place between the two tracks is perfectly level; it is
leveled up by the cinders; it is leveled up to the bottom
of the rail next to the ties."

A witness named Kimmel, general manager of the ice
plant manufacturing establishment, testified as follows:
"The right of way between the main tracks from the
public square down to the junction is composed of cinders and ballast; it is packed by constant use, persons
traveling, pedestrians; the public used to go that way
when they would have business up there; also, folks
would travel that way on Sundays to see the sights
and take a walk; the people, that live north, travel that
way; they had no walks." This witness also states that
there was no fence along the right of way at that point;

that there were some posts there, but no wire; that there had been one or two wires, but that they had been cut down, and that, although there had been a fence there, the wires were broken down from the public square up to the junction, and that such had been its condition for several years.

One McLoid, a witness for the defendant and the locomotive engineer in charge of the engine that struck the deceased, testified as follows: "It is a very common thing for me to see people walking between those tracks; there is about fifteen feet between those tracks from center to center; there was plenty of room between the two tracks for persons to pass safely a train running on either track; it must be ten and a half feet between the rails; fifteen feet from center of the north-bound track to the center of the other track; it is ten and a half feet between the rails of the two tracks; the pilot-beam extends out over the rail in the neighborhood of sixteen or eighteen inches; * * * it is between the two main tracks and is graded up with cinders; * * * there is constantly people along the road there; the public use it; I know that, and I knew it at the time, and had known it for some time."

A witness, named Conway, the fireman on the train which struck the deceased, testified as follows: "It was a frequent occurrence to see men walking there between the tracks as I saw Mr. Eicher; * * * I suppose it is about fourteen feet between the two tracks from rail to rail, the closest rails." A witness named Ray testifies that the distance between the west rail of the north-bound track to the east rail of the south-bound track was about ten feet and two and a half inches.

It thus appears from the testimony, that the walk in question had been used for years by the public as an approach to the depot and public square with the consent and by permission of the railroad company. If the evidence showed that there was nothing more in the facts

of the present case than a supposed implied assent of the company to the use of the walk between the tracks by the public from its non-interference with a prevailing practice of that kind by individuals, it might be said that the deceased was a wrongdoer and trespasser in walking upon the right of way of the company. But there was here something more than a mere naked license or permission to enter upon the right of way of the company. By building up the walk between the tracks to the level of the rails, and making the cinders and slag firm and strong so as to constitute a passageway, the company virtually invited the public to enter upon their property, especially as the walk in question was used as an approach, not only to the public square, but to the company's depot. There is a distinction between cases, where the owner grants a mere naked license or permission to enter upon or pass over an estate, and cases, where such owner holds out any invitation, allurement or inducement to persons to enter upon or pass over his property. "A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly, or by implication, induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby." (*Sweeney* v. *Old Colony and Newport Railroad Co.* 10 Allen, 368; *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer*, 139 Ill. 596). The proof in the case at bar shows that there was here not a mere passive acquiescence in the use of this path by the public, but that the company, in view of its conduct in reference to the same, induced persons to enter upon and pass over it. It can not be said that the deceased was a trespasser upon the right of way of the appellant company, because he was there, either directly or by implication, through the invitation of the company. The facts, thus referred to,

distinguish the case at bar from the case of *Illinois Central Railroad Co.* v. *O'Connor*, 189 Ill. 559, and the cases therein referred to and commented upon.

In *O'Connor's case, supra*, it is said that there was no evidence to the effect that any of the employees of the company in charge of the train saw or had actual notice of the fact, that the person, upon whom the injury was inflicted, was on the track or right of way. Here, however, the evidence shows that the engineer and the fireman both saw the deceased upon the right of way before the train reached the point where he was walking, and that no steps were taken to slacken the speed of the train. In *O'Connor's case, supra*, it was said (p. 566), quoting from Elliott in his work on Railroads: "Mere sufferance or passive acquiescence in the occasional use of the track between crossings does not necessarily amount to a license, and where nothing more is shown, one who so uses the track is a trespasser." In the present case, something more than mere sufferance or passive acquiescence in the occasional use of the path in question is shown. Nor is there any evidence, so far as I have been able to discover, tending to show that the deceased was not in the exercise of due care for his own safety, because the locomotive engineer and the fireman upon the train, which struck him, state that, when they saw him, he was in the middle of the passageway in question.

In view of what has been said, I concur in the following views, expressed by the Appellate Court in their decision of this case: "It is at least a proper inference from the evidence that the appellant owned the strip of ground between the two parallel lines of railroad track upon which deceased was walking, but it had suffered the same to become and be in general use by the public as a walk or way. While it may be that the deceased was there by mere permission, he was in no sense a trespasser. * * * The question of whether deceased was exercising ordinary care was a question of fact for the jury.

It cannot be contended that the mere act of walking along that public traveled way was a failure to exercise ordinary care, for it was not in violation of any law, nor was it a trespass, and the evidence conclusively proves' that such was the ordinary conduct of the inhabitants of the city of Carbondale and vicinity. It is clear from the evidence that deceased neither saw nor heard the approaching train, and that no effort was made by those in charge of the train to attract his attention. We do not feel warranted in holding that failure to see or hear the train under such circumstances, takes the question as to due care out of the domain of fact and makes it a question of law."

*Second*—Some objections are made to the instructions given by the trial court on behalf of the appellee. Two of these instructions are objected to upon the ground that they refer to "the negligence charged in the declaration." Instructions, thus referring to the allegations in the declaration, have been approved in a number of cases, and consequently the objection thus urged is without force. (*Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9, and cases there referred to). Objection is made to some of the instructions upon the ground that they apply to the deceased, at the time of the injury to him, the benefit of the provisions of the statute and ordinance in regard to the rate of speed to be observed by passenger trains passing through the limits of the city. The objections thus made proceed upon the theory that the deceased was a trespasser. The contention of the appellant is, that the passage of the train at a rate of speed greater than that permitted by the city ordinance could only be considered as a circumstance, showing negligence on the part of the company, in case the deceased had been lawfully upon the right of way. (*Illinois Central Railroad Co.* v. *O'Connor, supra*). But in view of the evidence already commented upon tending to show that he was not a trespasser, but was upon the right of

way by the invitation of the company itself, the objections thus made are without force.

One or more of the instructions are also objected to,. as referring to the jury the question whether or not the deceased was a trespasser upon the right of way of the appellant company. In *Chicago, Burlington and Quincy Railroad Co.* v. *Murowski*, 179 Ill. 77, we said (p. 82): "Under· the facts as they appeared from the evidence it was a. question for the jury to. determine whether plaintiff was a trespasser, or whether he was rightfully on defendant's property at the time he was injured." So, under the facts appearing from the evidence in this case, I think that it was a question for the jury to determine, whether the deceased was a trespasser, or was rightfully upon the. right of way of the appellant company. Consequently, there was no error in the instructions in this regard.

· Some objection also is made to an instruction, given on behalf of the appellee, in regard to the damages to be awarded to the appellee. This instruction is objected to as containing the following language: "The jury may give plaintiff such damages as they shall deem from the evidence a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of said deceased, if any, not exceeding the sum of $5000.00." The proof shows that the appellee's intestate was a farmer, and, as an employee of the owner of a small farm, was paid $20.00 a month for his services in running the farm. He left a widow and four young children. The language, objected to in this instruction, follows almost *verbatim* the language of section 2 of chapter 70 of the Revised Statutes in regard to injuries to the person. The last clause of that section is as follows: "And in every such action the jury may give· such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of $5000.00.'"

(2 Starr & Cur. Ann. Stat.—2d ed.—p. 2156). The instruction is not objectionable in the respect thus indicated.

*Third*—Even if the deceased was upon the right of way of the appellant company as a trespasser, it was the duty of the servants of the appellant, employed in the management of the train, to avoid the infliction of any injury wantonly or willfully upon the deceased. In other words, if the appellant company, or any of its servants, were guilty of wanton and willful negligence, the company is liable to the appellee, even if the deceased was a trespasser upon the right of way. Upon this subject I concur in the following views expressed by the Appellate Court in their opinion deciding this case: "Appellant's counsel tried the case in the circuit court on the theory that deceased was a trespasser, and that to warrant a recovery the evidence must prove wantonness or willfulness on the part of appellant. The circuit court agreed with counsel in this theory of the case, and, at counsel's instance and request, instructed the jury over and over again that, if deceased was walking on the right of way of the railroad company, then he was a trespasser, and there could be no recovery, unless such negligence is proven as amounts to wantonness or willfulness. One of the forms, in which it was put to the jury is, 'He (she) cannot recover, unless it is shown that the agents of defendant in charge of the train striking him, deliberately and wantonly, after they knew of his presence in the place of danger, ran the train against him; that merely negligently doing so, is not enough, that it must be deliberately and wantonly done before he (she) can recover.' Appellant's counsel presented this issue of fact directly to the jury upon the evidence before them, and the jury resolved the issue against the appellant; and were warranted in doing so. The running of a train through a city or village at a rate of speed prohibited by ordinance, may be and often is negligence so gross as to amount to a reckless, willful and wanton disregard of human life.—

*Chicago, Burlington and Quincy Railroad Co.* v. *Johnson*, 53 Ill. App. 478." In addition to the instruction referred to in the opinion by the Appellate Court, the appellant upon the trial below, asked for, and succeeded in obtaining from the court, an instruction containing the following words: "Before you can give a verdict for the plaintiff here, it must appear from the evidence, if it is shown that the deceased, when struck, was on the right of way of defendant, that the trainmen after they saw the deceased was in a place of danger, wantonly and willfully ran the train against him. If the evidence fails to show this, then your verdict should be for the defendant."

Counsel for appellant say that the question, whether or not there was wanton and willful negligence, should not have been left to the jury, because there was no allegation in the declaration charging wanton or willful negligence. It must be observed, however, that the appellant itself submitted the question to the jury by its own instructions, and, therefore, cannot complain, there having been certain circumstances in the evidence tending to support the charge of wanton and willful negligence. It has been held by this court that, when facts proven are not within the allegations of the pleadings, neither party can complain if each procures instructions, declaring the rules of law applicable to the facts shown by the testimony, regardless of the issues made by the pleadings, and asks a verdict in accordance therewith. (*Illinois Steel Co.* v. *Novak*, 184 Ill. 501; *Chicago and Alton Railroad Co.* v. *Harrington, supra*).

I can see no good reason for reversing the judgments of the lower courts, and think that the judgment of the Appellate Court, affirming the judgment of the circuit court, ought to be affirmed.