# Kate Shannon, Administratrix, v. The Chicago & Alton Railway Company.

1. ORDINARY CARE—*essential to recovery in action for death caused by alleged wrongful act.* In order that the personal representative of one whose death has been caused by the defendant may recover, it is not only essential that the negligence of the defendant as charged in the declaration shall be established, but also that the intestate of such representative shall appear at the time of the accident to have been himself in the exercise of ordinary care.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of McLean County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed March 20, 1906.

STONE & OGLEVEE, for appellant.

KERRICK & BRACKEN, for appellee; F. S. WINSTON, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action on the case by appellant against appellee to recover damages for negligently causing the death of Thomas P. Shannon. At the close of plaintiff's evidence a peremptory instruction offered by defendant was taken under advisement by the court, and thereupon defendant introduced evidence in its behalf. At the close of all the evidence defendant again offered a peremptory instruction, but the court refused to consider the same, or to consider the evidence introduced by defendant, and gave to the jury the peremptory instruction offered at the close of plaintiff's evidence, and entered judgment against plaintiff for costs and in bar of the action.

The evidence introduced on behalf of appellant tended to show the following facts: On November 26, 1904, the deceased, who had previously made application to appellee for a position as locomotive fireman, received from appellee's superintendent of motive power, a letter, as follows:—

"The Chicago and Alton Railway Company.

Motive Power Department.

C. E. Fuller, Sup't Motive Power.

Bloomington, Ill., Nov. 26, 1904.
All Freight Engineers, Eastern Division, South:

This will be your authority to allow bearer, T. P. Shannon, applicant for position as fireman, to ride on your engine for the purpose of learning the road and learning to fire an engine.

You and your fireman will please render him such assistance and information as will enable him to become competent to fire an engine. You will please show on the lines below, the engine number and day he fired your engine, together with other information, stating under 'Remarks' whether or not he is competent to fire this engine.

C. E. FULLER,
Sup't Motive Power.

| Date | Engine | Train | From | To | Engineer | Remarks |
|------|--------|-------|------|-----|----------|---------|
| ......... | ......... | ......... | ......... | ......... | ......... | |
| ......... | ......... | ......... | ......... | ......... | ......... | |
| ......... | ......... | ......... | ......... | ......... | ......... | |
| ......... | ......... | ......... | ......... | ......... | ......... | |
| ......... | ......... | ......... | ......... | ......... | ......... | " |

On November 27, 1904, the deceased, in pursuance of his written authority, got upon a freight engine going south from Bloomington, and rode thereon until the engine reached Lefton, where the deceased left that engine, and boarded engine No. 427, which was hauling a freight train north to Bloomington. Upon presentation of his authority to the engineer of engine No. 427, deceased was told that the engine was steaming poorly, and that he could not fire it; that it was a hard proposition for the regular fireman to do

the duty without a new man doing the work. Deceased then rode on the engine, sitting on the fireman's seat in the cab, until the train reached Ridgley, where it stopped for coal and water. At Ridgley appellee has two main tracks running north and south, the east track being the north-bound track, and the west track the south-bound track. Water is supplied to locomotives by a large tank on the west of the west track and two stand pipes, one on each side of the two tracks. Coal is stored in an elevator located on the east side of the north-bound track. The standpipe and elevator are each 3½ feet from the east rail of the east track. The standpipe is about 18 feet high and is equipped with an arm or crane that is turned over the opening in the engine tank when taking water and is turned back parallel with the track when not in use. There is also a lever near the base of the standpipe that is used to turn the crane in position when it cannot be reached from the tender of the engine. When the engine stopped at the standpipe, Craig, the regular fireman, went back over the tender to take water, and shortly thereafter the deceased also came from the cab onto the tender and asked Craig if there was anything he (deceased) could do. Craig told deceased to get down and turn the water crane around so that the engine could be moved up to take coal. Deceased then jumped from the tender to a car of slack just behind the tender and from there reached the ground on the east side of the track, and by means of the lever properly turned the crane so it cleared the track. Craig then proceeded to take coal, and did not again see deceased until the latter was found dead on the west side of the north-bound track. The evidence tends to show that immediately after he had turned the crane in position, deceased must have climbed between two cars back of the engine for the purpose of going on the west side of the track, and when he reached the west side or was attempting to cross the southbound track he was struck by the locomotive of a passenger train going south at a speed of from 30 to 50 miles an hour.

The declaration contains five counts. The first count alleges that deceased was a student learning the duties of a fire-

man on the road of appellee, and as such was under the care
and instruction of the engineer and fireman of engine No.
427, and that it was their duty to warn him of the dangers in-
cident thereto, which they knew and which were unknown to
deceased; that the engineer and fireman were guilty of negli-
gence in sending deceased to turn the crane without giving
him warning of the dangers attending his return to the
engine, and that as a direct result of such negligence deceased
was killed, while in the exercise of due care for his own
safety. The second count charges that deceased was a stu-
dent fireman, rightfully upon the right of way of appellee
and that he was killed while in the exercise of due care for
his own safety by the negligence of the servants of appellee
having charge of the passenger train in not giving some suf-
ficient warning of its approach. The third count alleges that
deceased was a passenger and was killed by the negligence of
appellee in running the passenger train. The fourth count
alleges that deceased was in the employ of appellee, and that
he was killed by its negligence as charged in the second
count. The fifth count alleges that deceased was in the
employ of appellee, and that he was killed by its negligence
as charged in the first count.

The trial court having refused to consider appellee's mo-
tion for a peremptory instruction made at the close of all
the evidence, and having sustained such motion as made at
the close of appellant's evidence, the only question involved
is whether or not the evidence for appellant with all the
inferences that may justifiably be drawn therefrom is suf-
ficient to support a recovery.

It may be conceded that the relation of the deceased to
appellee was neither that of a trespasser nor bare licensee.
Whether the deceased in his relation to appellee be held to
have been a licensee by invitation or an employee, it was in-
cumbent upon appellant to show that he was, at the time of
his death, in the exercise of due care for his own safety and
that appellee was negligent in one or more of the respects
alleged in the declaration and that such negligence was the

proximate cause of his death.    I. C. R. R. Co. v. Eicher, 202 Ill., 556.

If it be conceded that the relation of fellow servants did not exist as between the deceased and the engineer and fireman of engine No. 427, we cannot conceive upon what theory appellee could be held guilty of negligence in the failure of its fireman and engineer to notify deceased that a passenger train was due to go south on the west track, at or about the time engine No. 427 stopped for coal and water. Deceased, in turning the crane of the standpipe on the east side of the track, was in a place of absolute safety as regards the passenger train, and he could have returned to his place in the cab of the engine by the route he took to reach the standpipe, or by going between the standpipe and elevator, and the train, either of which would have been free from danger.    There was no occasion for his going between the cars to the west side of the train on the south-bound track and neither the engineer nor fireman could have anticipated that he would do so.    He so went voluntarily and without the line of his duty.    Deceased must be held to have known that the south-bound track was a place of danger, and in approaching that track or attempting to cross it, it was his first duty in the observance of ordinary care for his own safety to ascertain if a train was approaching.    His view of the track to the north was unobstructed and no conditions existed that excused his failure to observe the train.

While there was no duty on the part of the servants of appellee in charge of the passenger engine, either by statute or because of known or apprehended danger, to give warning signals as the passenger train approached the place of the accident, the evidence shows that the whistle was sounded a sufficient length of time before the deceased was struck, to have enabled him, in the exercise of ordinary care for his own safety, to escape unhurt, and there is no evidence to the contrary.

It is urged that the court erred in refusing to allow the witness John Lombardo to answer the question, "Do you know how Joe Allen came by his death"?    Also in sustain-

ing appellee's objection to the offer by appellant to prove by that witness, "that on February 3, 1904, one Joe Allen was killed by being struck by a passenger train south-bound, while standing by the side of an engine on the north-bound track at the water and coaling station north of Ridgley, at the place of this accident." The evidence was incompetent in any event (Mobile & Ohio R. R. v. Vallowe, 214 Ill., 124), but if appellant's theory that it was competent for the purpose of showing that appellee had notice of the dangerous character of the place, be conceded, the offer did not disclose facts identical with those in the case at bar.

The witness John Power testified that he saw the engine strike deceased, and the court, therefore, did not err in not permitting appellant to show the habits of deceased with reference to care and caution for his own safety.

In the absence of evidence tending to prove that the deceased was in the exercise of due care for his own safety, and that appellee was negligent, the peremptory instruction was properly given, and the judgment will be affirmed.

*Affirmed.*