## Thomas Seymour, Appellee, v. Illinois Southern Railway Company, Appellant.

1. RAILROADS—*to whom company owes duty to sound bell or whistle.* There is no duty toward one at the side of a railroad track to load a wagon from a car, to sound the whistle or bell on an approaching engine since the statute requiring signals before reaching crossings is intended merely to protect passengers and persons on the public highway about to cross or enter on a crossing.

2. RAILROADS—*when person is lawfully on premises.* One who is at the side of a railroad track to load a wagon from a car is lawfully upon the company's premises and the company owes him the duty not to injure him, either wantonly, wilfully, or negligently.

3. RAILROADS—*wanton or reckless injury.* Failure to sound a bell or whistle on an approaching engine is of no weight in determining whether a person lawfully beside a railroad track to load a wagon was wantonly injured by servants of the company, since the statute requiring such warnings, does not extend to such a case.

4. RAILROADS—*wanton or reckless injury.* A finding that the servants of a railway company were guilty of wanton recklessness in operating an engine which struck the plaintiff's horse and knocked him against the plaintiff, is unwarranted, where from the evidence it seems that the speed of the engine was ten to fifteen miles an hour, that plaintiff was beside the track to load a wagon, and that his team and wagon were sufficiently distant to be out of danger when seen by the defendant's servants, but that the horse turned toward the engine after the pilot beam passed him, causing the tender beam to strike him.

Action in case for personal injuries. Appeal from the Circuit Court of Washington county; the Hon. A. D. RODENBERG, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed June 27, 1912. Rehearing denied, October 23, 1912.

R. J. GODDARD and LOUIS E. HART, for appellant.

G. C. BORDERS and WEBB & WEBB, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Judgment was rendered in the Circuit Court of Washington county against the appellant for $750.00, and this appeal is prosecuted to reverse said judgment. It appears from this record that in April 1910, appellant was operating its railroad which passed east and west through the north limits of the city of Nashville. Depot street extends north from the public square of said city, upon or near which appellant's depot is located. East of this street one block, and running parallel with it, is Mill street. Defendant's road intersects these streets, the former at or near its depot. On the south side of its road is a spur or switch extending from west of Depot street east across Mill street and to the Hughey mills located five or six hundred feet east of Mill street. The track at some point between Depot street and the mills, curves to the northeast; this side track was used by persons transacting business with the defendant, as a place for loading and unloading freight into and out of wagons. On April 1st, appellee was engaged in unloading stone from a car standing upon this side track, and in connection with such unloading he was using a team and had in his employ a man by the name of Jones who assisted him in unloading the stone from the car on to the wagon; appellee was using two wagons and one team of horses. While Jones loaded one wagon appellee would take the other wagon loaded with stone and deliver it, come back and leave the empty wagon and change his team of horses to the loaded wagon. At about five o'clock in the afternoon, and while plaintiff was away with one of the wagons, a freight train of appellant came in on its main line, unhooked the engine from the train and run on to the

switch and pushed the car of stone back to the mill, some six or seven hundred feet distant from where appellee and his assistant had been engaged in the unloading of stone from the car on appellant's road. That while appellee was gone with this wagon Jones, the assistant, had loaded the wagon that had remained, and about the time that he had completed the loading of this wagon the engine pushed the car back to the mill above referred to. That while the engine was at or near the mill and around a curve appellee returned with his empty wagon and finding the other loaded unhooked his team and drove the horses over the tongue of the loaded wagon and after driving his horses across the tongue he was at their heads attempting to fasten the neck-yoke upon the horse nearest to the track; his assistant at the same time was engaged in hooking the horses up to the double-trees, and at this time the engine approached from the mill and, as it passed by, the tank beam struck the horse nearest the switch upon the rump and threw the horse forward several feet, and in moving forward the horse struck plaintiff and injured him. The wagon stood some two or three feet away from appellant's track and far enough to clear the cars as they passed by.

The evidence discloses that the pilot beam on the engine extended out over the tracks the same distance as the tender beam, and was of the same height from the ground. The pilot beam passed the horse without striking him, and the fireman says that between the time the pilot beam passed the horse and the tender beam reached it that the horse turned his rump toward the engine, and that caused the tender beam to strike him. The horse was a grey one and grey hairs were afterward found upon the tender beam. There is a conflict in the evidence as to the speed at which the engine was running at that time. The witness Jones fixed it at twenty miles an hour, while other witnesses fixed it from five to eight miles, and others from ten to fifteen miles an hour. There is also a conflict as to

whether or not the employes of appellant blew the whistle or rang the bell.

The declaration consists of three counts. The first count charges that the servants of appellant in charge of the locomotive engine negligently operated the same without warning or any signal, over and along said "teaming track" where the plaintiff was engaged at work and in consequence of such negligence ran into plaintiff's horse and knocked it against the plaintiff.

The second count charges that appellant negligently drove its said engine at a dangerous rate of speed over and along the said track and by reason thereof collided with the horse.

The third count alleges that the servants of appellant, wantonly, recklessly and negligently run, operated and managed said train at an unlawful and dangerous rate of speed, to-wit, twenty miles per hour, and failed to ring the bell or blow the whistle or give any other signal or warning of its approach, and avers that in consequence of such wanton negligence the engine ran with great force and violence against plaintiff's horse.

Appellant filed the plea of general issue.

Two of the errors assigned by counsel for appellant are that the court erred in overruling appellant's motion for a new trial, and in rendering judgment upon the verdict. We think the whole case can be determined from these errors as a decision of the case necessarily involves a discussion of the facts. Much of the evidence and the discussion of counsel is devoted to the question as to whether or not appellant's servants sounded the bell or blew the whistle as it approached the place where appellee was engaged at his work. As we understand the law, the appellant did not under the statute owe the appellee, situated where he was, the duty of sounding the bell or blowing the whistle. The statute requiring the appellant to ring the bell and blow the whistle, for the distance of eighty rods before reaching a highway crossing, was not in-

tended as a duty towards people who were at the side of the railroad, whether lawful or unlawful. We think that appellee was lawfully at the place where he was engaged at work and had a right to be there but this statute was enacted for the protection of persons upon the public highway that were about to cross the railroad or enter upon its crossing, and for passengers. It is said in the case of Williams v. Chicago Railroad Company, 135 Ill. 491, ''That unless the injured person was upon a public highway or was a passenger upon the train, the railroad company owed him no duty to ring a bell or sound a whistle as required by statute, and he could not hold the railroad company liable for the failure to perform the statutory duty because the company had violated no duty which it owed him.'' And this same doctrine was announced in the case of Illinois Central Railroad Company v. Eicher, 202 Ill. 556, and in the case of Thompson v. C. C. C. & St. L. R. R. Co., 226 Ill. 542. The appellee was not upon the public highway, he was not about to enter the public highway for the purpose of crossing the railroad, and as we view the law had no right to invoke the duties enjoined upon the appellant by this statute.

It is insisted by counsel for appellee that the acts of the defendant were not only negligent but were wanton and wilful, and that by reason of said defendant's servants' wanton, reckless and negligent operation of said train at a dangerous rate of speed and failing to ring the bell and blow the whistle the appellee was injured. The witnesses were at considerable variance in their estimation of the speed at which the engine was being operated. Mr. Jones, who saw the engine but for an instant, and, as we think, was not in a very good position to say how fast it was running, estimated the speed at twenty miles per hour, while Brandhorst, another witness of appellee fixes the speed at from ten to fifteen miles per hour, and these were the only witnesses of plaintiff that claimed to be able to fix the speed, while the fireman McKelvey, fixes

Seymour v. Illinois Southern Ry. Co., 173 Ill. App. 326.

it at five miles per hour and Burgoyne, five or six miles per hour and Lynn and Henderson each fix it at about five miles per hour. They were connected with the operating of the train. Believing as we do, that Jones was not able from his observation, as he says, "the whole thing was done in a dash," to determine with any degree of accuracy the rate of speed at which the train was being operated, we are satisfied that it could not under this testimony have been running to exceed ten or fifteen miles per hour, as estimated by plaintiff's witness Burgoyne. It also appears to us that the rate of speed could not have had very much to do with the knocking of the horse against the plaintiff, for whether the train was running eight miles an hour or ten miles an hour and struck the horse as it did it would have the effect to knock him forward, and the thing that caused the engine to strike the horse was the fact that between the time the pilot beam passed him and the tender beam reached him he turned his rump towards the engine and this caused the trouble. We agree with the contention of counsel for appellee that he was lawfully upon the premises of appellant, and appellant owed him the duty not to wantonly or wilfully or even negligently injure him and if it did a liability would then accrue. It is said by appellee in his brief, "At any rate the failure to apprise the appellee of the approach of the engine by sounding a bell or blowing a whistle is nothing short of recklessness or wantonness, and words are inadequate to properly characterize such conduct on the part of appellant's servants in view of the public nature of the place and the business connected thereat." By this it will be seen that in arriving at their wantonness and recklessness, great reliance is placed upon the failure to give warning of the approach of the engine, but as we have stated above, this was not a duty enjoined by statute upon the part of the appellant towards the appellee and hence could have no weight in determining the question of wantonness. It is said by the Su-

preme Court of Illinois, in the case of Illinois Central Railroad Co. v. O'Connor, 189 Ill. 566, "While it is true the Railroad Company was running its train at a greater rate of speed than allowed by the ordinance of the City of Chicago, yet that fact did not relieve the deceased from the exercise of ordinary care, nor can the speed of the train alone be regarded as furnishing a sufficient reason for holding that the injury was wilful or wanton." In the case of L. S. & M. S. R. R. Co. v. Bodemer, 139 Ill. 606, the Supreme Court says, "What is meant by 'such gross negligence as evidences wilfulness'? It is 'such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness' (2nd Thompson on Negligence, 1264, Sec. 52); it is such gross negligence as to imply a disregard of consequences or a willingness to inflict injury." Also see I. C. R. R. v. Leiner, 202 Ill. 624.

It is said in the case of C. C. C. & St. L. R. R. Co. v. Cline, 111 Ill. App. 422, "The acts so characterized must be the result of more than slight or ordinary negligence, (L. S. & M. S. Ry. v. Bodemer, *supra*); wilful negligence is a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another which duty the person owing it has assumed by contract or which is imposed upon the person by operation of law. It is an entire absence of care, for the life of the person or property of others such as exhibits a conscious indifference of consequences." When this test is applied to the facts as disclosed by the record what is there in it to show a conscious indifference to the life or property of appellee? It is very clear that those operating the train did not see that the horse or the appellee were in danger, did not realize that anything was liable to happen by passing by the team as the wagon and horses when seen by the servants of appellant were sufficiently distant from the railroad track to be out of danger, and as before stated, there was no danger and

no accident could have happened had the horse not moved from the position he was in when first seen. This case is entirely different from that class of cases where a person is seen in peril or where a train is operated through a crowd of people at a high and reckless rate of speed.

We are of the opinion that there is nothing in this record that warranted the jury in finding that appellant's servants were guilty of wanton recklessness in the operation of this engine, and that it would be manifestly against the weight of the evidence to permit this verdict and judgment to stand; the judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*